J-S21021-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CARL E. HUTH, II | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KRISTY L. POLLOCK | : | No. 343 MDA 2022 |

Appeal from the Order Entered February 3, 2022,
in the Court of Common Pleas of York County,
Civil Division at No(s):  2021-FC-001196-03.

BEFORE:   DUBOW, J., KUNSELMAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY KUNSELMAN, J.:                    **FILED AUGUST 22, 2022**

Carl E. Huth, II (Father) appeals the order issued by the York County Court of Common Pleas, which awarded Kristy L. Pollock (Mother) primary custody of their 7-year-old daughter, H.D.H. (the Child).  The court treated the custody dispute as a relocation matter under 23 Pa.C.S.A. § 5337; the order effectively granted Mother's request to remain in Tennessee with the Child.  After careful review, we affirm.

The record discloses the following factual and procedural history:  The Child was born in December 2014.  The parties' relationship ended in December 2018.  Thereafter, the parties shared custody without a formal order.  In August 2019, Father moved to York County, Pennsylvania.  He subsequently married Stepmother and adopted her child.  At the beginning of

_____

[*] Retired Senior Judge assigned to the Superior Court.

the COVID-19 pandemic in 2020, Mother and the Child moved to Tennessee to reside with Maternal Grandfather.

It was the Father's understanding that Mother and the Child were only staying in Tennessee temporarily, to quarantine with Maternal Grandfather, as the world waited to see how long the pandemic would last. After about a month, the parties began exchanging custody between Pennsylvania and Tennessee. Father testified that they shared custody on a two-weeks-on, two-weeks-off basis, but that sometimes Mother had longer periods, especially when Stepmother underwent cancer treatments. Eventually, Mother decided she wanted to stay in Tennessee permanently

In July 2021, Mother informed Father that she enrolled the Child in the local Tennessee school district. Both parents filed for custody in their respective jurisdictions, thereby implicating the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA). *See* 23 Pa.C.S.A. §§ 5401-5428. Upon following the UCCJEA protocols, the courts determined that the York County Court of Common Pleas (Pennsylvania) would exercise jurisdiction.

The trial court held a custody hearing on January 18, 2022. Evidently, the court proceeded under Father's custody petition, but treated Mother's request as one for relocation under Section 5337. On February 2, 2022, the court issued an order and opinion, wherein the court awarded Mother primary physical custody of the Child in Tennessee, subject to Father's partial custody in Pennsylvania. Father received partial physical custody during the Child's Fall and Spring breaks, alternating holidays, and for seven weeks during the

Summer. Legal custody remained shared. ***See*** Court Order and Opinion, 2/3/22. Father timely-filed this appeal and presents the following issues:

1. Did the trial court commit an error of law or abuse its discretion in granting Mother the right to relocate with the Child from Pennsylvania to Tennessee?

2. Did the trial court commit an error of law or abuse its discretion by not appropriately applying proper weight to the factors that affect the best interests of the Child in awarding Mother primary physical custody?

Father's Brief at 4 (cleaned up).

Father's appellate issues concern the trial court's application of the factors under Sections 5328(a) and 5337(h), respectively. We address these issues contemporaneously. To do so, we start by acknowledging the pertinent scope and standard of review:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

***S.T. V. R.W.***, 912 A.3d 1155, 1160 (Pa. Super. 2018) (citation omitted).

The Child Custody Act contains two sets of factors the courts must consider, depending on the type of action. ***See*** 23 Pa.C.S.A. § 5328(a)(1)-

- 3 -

(16); *see also* 23 Pa.C.S.A. § 5337(h)(1)-(10). Section 5328(a) provides: "In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including [factors 1 through 16.]" *Id.* We have held the court must conduct a Section 5328(a) analysis when a party seeks to modify a type of custody award. *See A.V. v. S.T.*, 87 A.3d 818, 824 n.4 (Pa. Super. 2014); *see also* 23 Pa.C.S.A. § 5338 ("Modification of existing order."); *and see* 23 Pa.C.S.A. § 5323(a) ("Award of custody."). Although, when a party merely seeks modification of "a discrete custody-related issue" a comprehensive Section 5328(a) analysis is not always necessary. *See M.O. v. J.T.R.*, 85 A.3d 1058, 1063 (Pa. Super. 2014).

Separately, Section 5337(h) enumerates ten factors a court must consider in determining whether to grant a proposed relocation, again giving weighted consideration to those factors which affect safety. Where one party proposed relocation while the other sought custody modification, we have held courts must consider **both** sets of custody factors. *See E.D. v. M.P.*, 33 A.3d 73, 82 (Pa. Super. 2011). Similarly, when a proposed relocation necessarily involves a modification of a type of custody, courts must consider both sets of factors. *A.V.*, 87 A.3d at 824-824; *see also D.K. v. S.P.K.*, 102 A.3d 467, 476-77 (Pa. Super. 2014) (acknowledging several factors directly or implicitly overlap).[1] Finally, a trial court must delineate its reasons, either on the record

_____

[1] Here, the trial court considered the relocation factors, presumably because Pennsylvania was deemed to be the Child's home state under the UCCJEA,
*(Footnote Continued Next Page)*

in open court or in a written opinion or order, pursuant to 23 Pa.C.S.A. § 5323(d).

With these principles in mind, we turn to the trial court's findings under Sections 5328(a) and 5337(h), respectively. The trial court made the following findings under Section 5328(a)

**(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.**

The court finds that this factor weighs equally. Both parents are supportive of the other having regular and active contact and engagement with the Child.

**(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.**

This factor is not applicable. There was no evidence presented with regard to alleged abuse by either party.

**(3) The parental duties performed by each party on behalf of the child.**

This factor weighs equally. The court finds that both parties are able to perform all parental duties when they have custody of the Child.

**(4) The need for stability and continuity in the child's education, family life and community life.**

This factor slightly favors Mother. The court finds that the Child appears to be settled at her current residence with

_____

and because Father claimed the move to Tennessee was only supposed to be temporary. Father does not challenge the court's consideration of the relocation factors, and thus we need not address whether the court had to analyze them under these circumstances.

Mother and Maternal Grandfather, and is doing well at her current school.

[In the trial court's opinion filed pursuant to Pa.R.A.P. 1925(a), the court made two additional observations under this factor:

"First, there was testimony from Mother that, on a least two occasions, Father contacted her to make arrangements for the Child to return to her custody several days earlier than planned because Father and the Child had left the residence Father shared with his wife (Child's Stepmother) and were temporarily residing in a motel. Mother further testified that Father indicated there were some marital issues going on in his home that he did not want the Child to be exposed to. On cross-examination, Mother testified that one of these incidents directly related to interactions involving the Child and Stepmother.

"Second, the Court is also concerned that when describing the relationship between the Child and Stepmother, both Father and Stepmother referenced there being "boundaries" set between the Child and Step-Mother. Given the Child's very young age, along with Mother's unrefuted testimony that on at least one occasion Father and the Child left Father's residence to stay in a motel due to some concerning interaction involving the Child and Stepmother, the court found Father's and Step-Mother's description of Step-Mother's relationship with the Child to be of concern and not indicative of a healthy bond between the two."]

**(5) The availability of extended family.**

The Court finds that this factor favors Mother. The Child has positive daily interactions with Maternal Grandfather while having only periodic interactions with Paternal and Step-Paternal Grandparents when in Father's Custody.

**(6) The child's sibling relationships.**

[On Father's side, t]he Child has a younger half-sister with Father who is close in age to the Child and with whom the Child has a positive bond. The Child also has two paternal older half-brothers who live in Washington state and who

- 6 -

the Child rarely sees. The Child also has two paternal adult step-siblings, one who she sees periodically and one who lives in Oregon.

[On Mother's side, t]he Child has an older half-sister with Mother who lives in Perry County, Pennsylvania who the Child sees at holidays and in the summer. The Child also has three maternal half-[brothers], with whom she has little or no contact.

The Court weighs this factor in favor of Father due to the Child's close relationship with her younger half-sister.

**(7) The well-reasoned preference of the child, based on the child's maturity and judgment.**

This factor weighs slightly in favor [of] Mother. The Child has a positive relationship with both Mother and Father and enjoys spending time with both, however she expressed no desire to change the current custody arrangement.

**(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.**

This factor is not applicable. Both parents support each other's engagement with the Child.

**(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.**

The Court finds that this factor weighs equally. Both are able to maintain a loving and stable relationship with the Child.

**(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.**

This factor weighs slightly in favor of Mother. The Court finds that, based upon Mother's availability due to

[Mother's] flexible school schedule, Mother has a slightly stronger emotional tie with the Child.

**(11) The proximity of the residences of the parties.**

The extremely long distance between the parties' residences in Pennsylvania and Tennessee, approximately 520 miles, is not conducive to a shared physical custody arrangement.

**(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.**

This factor weighs equally. Both parties are able to care for the Child or make appropriate childcare arrangements.

**(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.**

This factor is not applicable. The court finds little to no conflict exists between the parties other than their disagreement with regard [to] this custody matter. The court commends both parties for being amicable and cooperative for the Child's benefit.

**(14) The history of drug or alcohol abuse of a party or member of a party's household.**

Mother had a history of drug abuse, but the evidence established that she has been clean for at least seven years now. The court finds that this factor is not applicable.

**(15) The mental and physical condition of a party or member of a party's household.**

This factor is not applicable. There was no testimony with regard to any mental or physical condition of a party that prevents either from performing their parental duties.

*See* Court Order and Opinion, 2/3/22, at 5-9 (citing 23 Pa.C.S.A. § 5328(a));

*see also* Rule 1925(a) Opinion, 3/21/22 at 1-2.[2]

Regarding the relocation factors, the trial court made the following

findings:

**(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.**

This factor is neutral. Mother and Father both have a strong relationship with the Child, and the Child is close to both the Maternal Grandfather and a half-sister with Father.

**(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.**

This factor weighs in favor of relocation and remaining in Mother's primary physical custody in Tennessee. The Child is currently in a positive education setting at her school; and has a slightly stronger relationship and bond with Mother and Maternal Grandfather than with Father and Stepmother

**(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.**

The court finds that this factor weighs in favor of relocation. Based upon the school schedule in Tennessee, Father can

_____

[2] The trial court did not address Section 5328(a)(2.1)("The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services)."); nor did the court address Section 5328(a)(16) ("Any other relevant factor.").

have longer periods of partial physical custody with the Child during the school year than Mother could have if the Child attended school in Father's school district in Pennsylvania.

**(4) The child's preference, taking into consideration the age and maturity of the child.**

This factor weighs in favor of relocation and the Child remaining in Mother's primary physical custody during the school year.  As noted above under the custody factors, the Child expressed no desire to change the current custody arrangement, although she has a positive relationship with each parent and enjoys spending time with both.

**(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.**

The court finds that no evidence was presented indicating a pattern of conduct by any party to thwart the relationship of the Child with another party.  This factor is not applicable.

**(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.**

The court weighs this factor in favor of relocation and the Child residing primarily with Mother.  Mother has the emotional and financial support of her father, Maternal Grandfather, at their home in Tennessee, and she is able to pursue career training at school there.

**(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.**

The court weighs this factor as neutral.  It is positive in favor of Mother with regard to the Child's living situation in Tennessee with Mother and Maternal Grandfather, where the location is in line with the Child's love of the outdoors and outdoor activities.  It is negative against Mother and

relocation in that the Child will have diminished time with Father and her paternal family.

The court also weighs this factor as neutral due to Father agreeing to Mother and Child's initial temporary move to Tennessee, and based on a credibility assessment finds that Father was at least minimally receptive to Mother and Child continuing to reside in Tennessee.

**(8) The reasons and motivation of each party for seeking or opposing the relocation.**

The court finds that all parties are acting in good faith and seeking what they believe is in the best interests of the Child. This factor weighs equally.

**(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.**

This factor is not applicable, there was no evidence presented with regard to abuse by either party or household members.

*See* Order and Opinion, at 11-15 (citing 23 Pa.C.S.A. § 5337(h).[3]

Father's appeal largely consists of a factor-by-factor argument why the trial court should have found for him instead of Mother. For instance, under Section 5328(a)(10), the trial court found that Mother's flexible school schedule enables her to tend to the Child's daily needs. In his Brief, Father discredits Mother's flexible schedule, questioning the sincerity of her decision to seek education over gainful employment. He cites his own flexible work schedule to argue why this factor should favor him. *See* Father's Brief at 22. In another example, Father argues that the court should not have found that

_____

[3] The trial court did not address Section 5337(h)(10) ("Any other factor affecting the best interest of the child.")

- 11 -

Section 5328(a)(3) (parental duties performed by each parent) favored both parents equally; Father argues he had been more involved. *Id.* at 19. When the court found a factor in his favor – e.g., Section 5328(a)(6) (the child's sibling relationships) – Father argues the court should have afforded this factor even more weight. *Id.* at 21. Much of Father's appeal transpires in a similar fashion.

Father's rationale is logical; often, the record developed in a custody hearing will also support the opposite result. So much of a custody award depends upon the weight given to each factor, which in turn, depends upon the weight given to evidence and testimony. Ultimately, however, Father misunderstands our role as an appellate court. We do not make independent factual findings or reweigh the evidence. *S.T.*, 912 A.3d at 1160. "It is within the ***trial court's purview*** as the finder of fact to determine which factors are most salient and critical in each particular case." ***M.J.M. v. M.L.G.***, 63 A.3d 331, 339 (Pa. Super. 2013) (citation omitted) (emphasis added). This is because the presiding trial judge views and assesses the witnesses first-hand. ***S.T.***, 912 A.3d at 1160. "The parties cannot dictate the amount of weight the trial court places on evidence." ***A.V.***, 87 A.3d at 820.

For these reasons, we conclude none of Father's factor-specific arguments merits relief. We need not itemize each contention as they all meet the same fate for the same reason. Upon our review, we conclude the record supports the trial court's decision to award Mother primary custody in

Tennessee; it is irrelevant whether the record may or may not have also supported a primary custody award in Father's favor.

We do, however, address some of the finer legal points Father raises in his appeal. We observe that Father strongly urges us to find the trial court's finding under Section 5328(a)(14) (history of drug use) to be erroneous. *See* Father's Brief at 23. The trial court said this factor was not applicable. This factor is absolutely applicable. *See* 23 Pa.C.S.A. § 5328(a) ("In ordering any form of custody, the court shall…giv[e] weighted consideration to those factors which affect the safety of the child."). But the issue is one of semantics.

While the court said this factor was not "applicable," the court meant to say was that it did not afford this factor very much weight. In other words, the court clearly applied this factor, as demonstrated by its finding that Mother had been clean for seven years. We recognize Father's concern about Mother's history with drugs; Mother was previously addicted to heroin and opiates. Although we are not bound by the court's inferences, we decline to reweigh this factor in favor of Father. We note Father was aware of Mother's illicit drug use during their relationship, but Mother stopped using around the time she discovered she was pregnant. Evidently, Father was not concerned with Mother's substance abuse history when allowed Mother and the Child to stay in Tennessee indefinitely.

More generally, Father also claims the trial court's findings are cursory and that the court did not fully delineate its reasons for the award pursuant to Section 5323(d). In expressing the reasons for the custody decision, we

have said "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered, and that the custody decision is based on those considerations." *M.J.M.*, 63 A.3d at 226. A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d). *See D.Q. v. K.K.*, 241 A.3d 1112, 1118 (Pa. Super. 2020). "Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion." *A.V.*, 87 A.3d at 820. However, a court violates Section 5323(d) when the court's reasoning is so vague that a party is prevented from taking an effective appeal. *See C.B. v. J.B.*, 65 A.3d 946, 954-55 (Pa. Super. 2013).

Here, Father does not allege that the trial court's delineation prevented him from taking an effective appeal, nor does he seek a remand to allow the court to fully delineate its reasons (which is the proper relief due when a court violates Section 5323(d)). Rather, Father concludes we should reverse and instruct the court to grant Father primary physical custody. This we will not do; we conclude the court's delineation of reasons was sufficient.

Finally, Father takes issue with the fact that Mother never gave him notice of the proposed relocation under Section 5337(j). The Child Custody Act defines "relocation" as "[a] change in a residence of the child which significantly impairs the ability of a nonrelocating party to exercise custodial rights." 23 Pa.C.S.A. § 5322. A party proposing relocation must provide notice to any other individual who has custody rights, typically the other parent. 23

Pa.C.S.A. § 5337(c). When a party fails to provide reasonable notice, the court may make an adverse inference or even order the return of the Child:

> **(j) Failure to provide reasonable notice**.--The court *may* consider a failure to provide reasonable notice of a proposed relocation as:
>
> > (1) a factor in making a determination regarding the relocation;
> >
> > (2) a factor in determining whether custody rights should be modified;
> >
> > (3) a basis for ordering the return of the child to the nonrelocating party if the relocation has occurred without reasonable notice;
> >
> > (4) sufficient cause to order the party proposing the relocation to pay reasonable expenses and counsel fees incurred by the party objecting to the relocation; and
> >
> > (5) a ground for contempt and the imposition of sanctions against the party proposing the relocation.

23 Pa.C.S.A. § 5337(j) (emphasis added).

Assuming Mother even had an obligation to provide Father with notice of her proposed relocation, the trial court had discretion to consider this fact and impose relief under Section 5337(j). The court was not required to impose any sanction. As such, it did not err when it failed to hold the lack of notice against Mother. Indeed, Mother did not abscond to Tennessee in bad faith. She went with Father's knowledge and consent. We understand Father only consented to a temporary move, and we do not suggest Father forfeited his right to primary custody simply because he agreed the Child would be safer

in Tennessee, as a temporary measure, while the world came to grips with the COVID-19 pandemic. Again, we merely hold that Section 5337(j) affords the trial court discretion to weigh the lack of notice against Mother, and that the court did not abuse that discretion when it chose not to consider any of the remedial measures provided by Section 5337(j)(1)-(5).

In sum, we do not find that the trial court's conclusions are unreasonable in light of the evidence of record. *See S.T.*, 912 A.3d at 1160. We discern no abuse of discretion or error of law. The trial court properly applied the relevant factors and delineated its reasons for the award. The court acted within its discretion when it declined to impose relief under Section 5337(j).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/22/2022