J-A16032-20

2020 PA Super 249

D.Q.                                      :    IN THE SUPERIOR COURT OF
                                          :         PENNSYLVANIA
              Appellant                   :
                                          :
                                          :
                                          :
          v.                              :
                                          :
                                          :
                                          :
K.K., J.M. AND SCHUYLKILL COUNTY          :
CHILDREN AND YOUTH SERVICES               :
AGENCY                                    :    No. 124 MDA 2020

Appeal from the Order Entered December 18, 2019
in the Court of Common Pleas of Schuylkill County
Civil Division at No(s):  S-1451-2019

BEFORE:  PANELLA, P.J., STABILE, J., and MUSMANNO, J.

OPINION BY MUSMANNO, J.:                  **FILED OCTOBER 15, 2020**

D.Q. ("Maternal Grandmother") appeals from the December 18, 2019,
Order (the "Custody Order") denying her request for legal custody and
primary physical custody of her three dependent, minor grandchildren, D.M.
(a female, born in June 2017); B.M. (a male, born in April 2018); and L.M.
(a female, born in November 2019) (collectively, the "Children"), and
dismissing, without prejudice, her Custody Complaint.  The Custody Order
further directs that Maternal Grandmother shall complete an Interstate
Compact Placement of Children ("ICPC")[1] Request in the State of New

_____

[1] 62 P.S. § 761.

Hampshire,[2] to be followed by the Schuylkill County Children and Youth Services ("CYS" or the "Agency") participating in a review hearing in the Juvenile Division of the Court of Common Pleas of Schuylkill County to further consider Maternal Grandmother's request. Additionally, the Order provided that Maternal Grandmother and the Children's parents, K.K. ("Mother") and J.M. ("Father") (collectively, the "Parents"), shall continue supervised visits with the Children at CYS's offices in Pottsville, Schuylkill County, on the same basis that they currently visit with the Children, until a review hearing is scheduled in the Juvenile Division of the Court of Common Pleas of Schuylkill County, in accordance with the dependency Order dated July 8, 2019 (the "Dependency Order"). We affirm.

On July 30, 2019, Maternal Grandmother filed a Complaint for custody in Schuylkill County, seeking legal and primary physical custody of the Children. On November 26, 2019, the trial court held an evidentiary hearing, at which Mother testified on her own behalf and CYS presented the testimony of its caseworker, Tabitha Dusel ("Dusel").[3] Based on the

_____

[2] Maternal Grandmother formerly resided in Schuylkill County, Pennsylvania, and currently lives in New Hampshire.

[3] The Children's guardian *ad litem* ("GAL") for the dependency proceedings, Timothy Pellish, Esquire, was present but did not participate in questioning any witnesses, as he did not serve as the Children's GAL in the custody action. N.T., 11/26/19, at 4.

testimonial and documentary evidence, the trial court set forth the factual

background and procedural history of this appeal as follows:

1. The Agency became involved with the [P]arents and ultimately, by Order dated April 18, 2019, the [C]hildren were found dependent. After a protective order was unsuccessful, the conditions continued to deteriorate to the point [the Dependency] Order removed the [C]hildren from the [P]arents[,] thereby warranting the [C]hildren being placed in foster care through the Agency[,] where they remain to this day.

2. The instant Complaint was filed August 1, 2019, after [Maternal Grandmother] had come forward as a possible resource. [Maternal Grandmother] has moved from Pennsylvania to New Hampshire[,] where she now lives alone.

3. After [Maternal Grandmother] … testified, [was] cross-examined[,] and [her counsel rested her case], the Agency presented the testimony of [Dusel]. [] Dusel was familiar with [P]arents and introduced the business records of the Agency[,] and testified about the Agency's extensive history with [Maternal Grandmother] when she resided in Schuylkill County.

4. [] Dusel verified [Maternal Grandmother's] history with the Agency[,] and [Dusel's] recent dealings and contacts with [Maternal Grandmother] and the [P]arents. The Agency was involved with [Maternal Grandmother] in 2007 concerning housing instability[,] and [she] was uncooperative with the Agency.

5. In 2008, there was suspected drug activity involving [Maternal Grandmother,] and[,] in 2009[,] there were concerns with Mother's physical health as a minor while living with Maternal Grandmother…. As a minor, the Agency's records revealed that Mother appeared to be constantly ill and was not current with regard to her medical issues.

6. In 2011, Mother complained to the Agency that [Maternal Grandmother and Maternal Grandmother's] then[-]paramour were fighting constantly[,] and [Maternal Grandmother] was possibly under the influence[,] and again [the Agency was concerned about] whether Mother was current with her juvenile

medical needs[,] while [Maternal Grandmother] refused drug screens.

7. Later, in 2012 and 2013[,] … there were truancy referrals concerning Mother while in [Maternal Grandmother's] care[,] and[,] in February 2014[,] [Maternal Grandmother's] children[,] including Mother[,] were declared dependent for truancy.

8. The parties all agree that B.M. has respiratory medical issues requiring breathing treatments, and is seen routinely and for emergency visits presently at the Lehigh Valley Hospital – Cedar Crest Campus, Lehigh County.

9. The [P]arents support [Maternal Grandmother's] request to be the primary custodian of the [C]hildren.

10. The Agency filed shelter care [A]pplications on June 19, 2019[,] seeking [the] placement of D.M. and B.M.[,] by which the [c]ourt transferred custody to the Agency on July 8, 2019.

11. [Maternal Grandmother] came forward as a resource requesting custody. [Maternal Grandmother] was advised that an [ICPC] Request would need to occur in order for [Maternal Grandmother] to receive custody through the [ICPC] process because of [Maternal Grandmother's] residing in New Hampshire.

12. Thereafter, [Maternal Grandmother] filed the instant Custody Complaint[,] whereupon a custody conference occurred on August 29, 2019, but the Agency was unable to conciliate without the completion of the [ICPC] Request.

13. While processing the [ICPC] Request, [Maternal Grandmother] informed the Agency that [she] wished to be a formal kinship provider for the [C]hildren[,] thereby requiring [Maternal Grandmother] to be approved as a paid foster parent. This request was then withdrawn later by [Maternal Grandmother].

14. The [P]arents appeared, but did not testify[,] nor were they cross[-]examined, but acknowledged that they support [Maternal Grandmother's] request for full custody.

15. The [P]arents have since also left Schuylkill County and have moved to New Hampshire in close proximity to [Maternal Grandmother's] residence. Indeed[,] they initially stayed with [Maternal Grandmother] at her home in New Hampshire. Likewise, [Maternal Grandmother's] son also moved to New Hampshire where [Maternal Grandmother] resides. [Maternal Grandmother's] son also had drug issues[,] which were acknowledged by [Maternal Grandmother]. The [P]arents have been traveling from New Hampshire to Pottsville, Pennsylvania[,] along with [Maternal Grandmother,] to visit with the [C]hildren bi-weekly, on Saturdays, for four hours. Saliently, at the conclusion of the November [ ], 2019 visit, Mother went into labor and gave birth to L.M. at the Hazleton General Hospital in Luzerne County.

17. The Agency assumed emergency custody of L.M., and L.M. was placed in the same foster home with her older siblings. All three children are quite young, and the [P]arents acknowledge that they continue to use methamphetamines, have tested positive in [the] past[,] and continue to test positive for methamphetamines.

18. Because Maternal Grandmother's residence is in New Hampshire along with her children, the Agency has been unable to perform an assessment of [Maternal Grandmother's] home.

Trial Court Opinion, 12/18/19, at 3-6.

The trial court made the following conclusions of law:

1. [] Maternal Grandmother has standing to pursue physical custody of [the [Children] pursuant to 23 Pa.C.S.A. § 5324(3)(iii)(A).

2. [CYS] is required to complete an [ICPC] Request when considering resources out[-]of[-]state. The ICPC process is not yet completed in this matter.

3. Schuylkill County [CYS] presently has custody of the [C]hildren pursuant to a dependency finding and placement into Agency foster care on July 8, 2019.

4. [Maternal Grandmother's] home may be sufficient[;] however[,] it is concerning to the [c]ourt that [Maternal

- 5 -

Grandmother] was unable to recognize the ongoing drug use by the [P]arents when they relocated to the State of New Hampshire.

5. The need for stability and continuity in the [Children's] education, family life and community life is salient. At this juncture it can best be provided by the Agency.

It is the [trial court's] opinion that [Maternal Grandmother's] request for legal and physical custody of the [C]hildren must be denied[,] and the Complaint dismissed without prejudice. We further find that it is in the best interest of the [C]hildren that they remain in placement with [CYS] under [the Dependency Order].

Trial Court Opinion, 12/18/19, at 12-13.

On December 18, 2019, the trial court entered the Custody Order. The Custody Order directed Maternal Grandmother to complete the ICPC request in New Hampshire, followed by the Agency conducting a judicial review hearing, in the Juvenile Division of the Court of Common Pleas of Schuylkill County, to further consider her request for custody. Additionally, the Custody Order provided that Maternal Grandmother and Parents shall continue with supervised visits with the Children at CYS's offices in Pottsville, Pennsylvania, on the same basis that they currently visit, until a judicial review hearing is scheduled in accordance with the Dependency Order. On January 16, 2020, Maternal Grandmother filed a timely Notice of Appeal,

along with a Concise Statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).[4]

On appeal, Maternal Grandmother raises the following issues:

(A) Whether the trial court committed an abuse of discretion and an error of law by failing to award Maternal Grandmother sole legal and sole physical custody of the minor [C]hildren by misapplying and/or failing to properly analyze the custody factors set forth in 23 Pa.C.S.A. § 5328(a)[?]

(B) Whether the trial court erred in dismissing Maternal Grandmother's Complaint after finding that she had standing to pursue custody of the [Children] pursuant to 23 Pa.C.S.A. § 5324(3)(iii)(A)[?]

Maternal Grandmother's Brief at 6.[5]

In custody cases under the Child Custody Act, 23 Pa.C.S.A. §§ 5321-5340, our standard of review is as follows:

We review a trial court's determination in a custody case for an abuse of discretion, and our scope of review is broad. Because we cannot make independent factual determinations, we must accept the findings of the trial court that are supported by the evidence. We defer to the trial [court] regarding credibility and the weight of the evidence. The trial [court]'s deductions or inferences from its factual findings, however, do not bind this Court. We may reject the trial court's conclusions

_____

[4] Maternal Grandmother also filed a Motion for reconsideration on January 16, 2020. The trial court denied reconsideration in an Order dated and entered on January 17, 2020.

[5] While Maternal Grandmother stated her issues somewhat differently in her Concise Statement, we find that she has sufficiently preserved them for our review. *See Krebs v. United Refining Company of Pa.*, 893 A.2d 776, 797 (Pa. Super. 2006) (holding that an appellant waives issues that are not raised in both [her] concise statement of errors complained of on appeal and the statement of questions involved in [her] brief on appeal).

only if they involve an error of law or are unreasonable in light of its factual findings.

***C.A.J. v. D.S.M.***, 136 A.3d 504, 506-07 (Pa. Super. 2016) (citation omitted). Additionally,

> [t]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

***Ketterer v. Seifert***, 902 A.2d 533, 540 (Pa. Super. 2006) (citation omitted).

Maternal Grandmother contends that, despite properly finding that she had standing to pursue her Custody Complaint, the trial court improperly dismissed her Custody Complaint. ***See*** Maternal Grandmother's Brief at 13-23. She argues that the trial court abused its discretion and erred when it weighed and considered the custody best interest factors. ***Id.*** Additionally, Maternal Grandmother asserts that the trial court improperly directed her to participate in the dependency proceedings, through the ICPC, as a placement option for the Children in New Hampshire. ***Id.***

In any custody case, the primary concern is the best interest of the child. ***See*** 23 Pa.C.S.A. §§ 5328, 5338; ***see also W.C.F. v. M.G.***, 115 A.3d 323, 326 (Pa. Super. 2015). In assessing the child's best interest, the trial court must consider the best interest factors, set forth in Section 5328(a) as follows:

- 8 -

**§ 5328. Factors to consider when awarding custody**

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, education and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328. "All of the [best interest] factors … are required to be considered by the trial court when entering a custody order." *J.R.M. v. J.E.A.*, 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis omitted). Additionally, when a trial court awards custody, it "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.A. § 5323(d).

> In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." *M.J.M. v. M.L.G.,* 63 A.3d 331, 336 (Pa. Super. 2013), *appeal denied*, [620 Pa. 710], 68 A.3d 909 (2013). A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d). *Id.*

***A.V. v. S.T.***, 87 A.3d 818, 822-23 (Pa. Super. 2014).

Article III(a) of the ICPC provides as follows:

No sending agency shall send, bring or cause to be sent or brought into any other party state, any child for placement in foster care or as a preliminary to a possible adoption unless the sending agency shall comply with each and every requirement set forth in this article[,] and with the applicable laws of the receiving state governing the placement of children therein.

62 P.S. § 761[6]; ***see also*** 62 P.S. § 761, Article II(d) (defining "placement," in relevant part, as "the arrangement for the care of a child in a family, free or boarding home, or in a child caring agency or institution....").

Additionally, Article V(a) states, in relevant part, as follows:

The sending agency shall retain jurisdiction over the child sufficient to determine all matters in relation to the custody, supervision, care, treatment and disposition of the child which it would have if the child had remained in the sending agency's state until the child is adopted, reaches majority, becomes self-supporting, or is discharged with the concurrence of appropriate authority in the receiving state. ... The sending agency shall continue to have financial responsibility for support and maintenance of the child during the period of the placement….

***Id.***

In discussing the best interest factors, the trial court provided the following analysis and discussion:

**Factor (1)** concerns which party is more likely to encourage and permit frequent and continuing contact between the children and another party. This factor favors all parties [in this case].

_____

[6] 62 P.S. § 761 is implemented by the regulations at 55 Pa. Code § 3130.41.

**Factor (2)** concerns the present and past abuse committed by a party or member of the party's household. Whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child. This issue of abuse is a factor with regard to the parents in that [Maternal Grandmother] and the Agency agree that [the Parents'] illegal use of methamphetamines is a serious risk to these young [C]hildren. [Maternal Grandmother,] to her credit[,] has improved her life by securing a degree as a [r]egistered [n]urse, continues to improve upon her qualifications as a [r]egistered [n]urse, moved to New Hampshire to start a new life[,] and has garnered employment as a [r]egistered [n]urse[,] thereby improving her financial status. However, [Maternal Grandmother] does have an early history with the Agency. [Maternal Grandmother's] two children, especially Mother, still have a drug addiction to methamphetamine[s], and there was a [drug] history with the son[,] who has also moved to New Hampshire to be close to [Maternal Grandmother] and his sister, Mother herein. The Agency's concern about [Maternal Grandmother's] ability to protect the [C]hildren from the [P]arents is real and palpable upon the [c]ourt's observations of the [P]arents in the [c]ourtroom. This factor favors the Agency.

**Factor (3)** concerns the parental duties performed by each party on behalf of the child. The Agency[,] through its protective services in [the] foster parent program[,] have [*sic*] been providing excellent care for the [C]hildren[,] especially for B.M.'s health needs. Having foster parents and Agency employees maintain up-to-date medical care for all the [C]hildren is imperative. [Maternal Grandmother's] aspiration to keep the family together and raise the [C]hildren as blood members of her family is admirable. However, the realities of the situation are that[,] even though [Maternal Grandmother] has a flexible work schedule, it would be extremely difficult for her to provide a stable environment, perform parental duties, and/or provide for child care co-existent with her employment responsibilities for three children ages 2 [years], 1 year and five months, and a newborn[,] plus provide supervised visits with the drug[-]addicted parents. As such, this factor favors the Agency.

**Factor (4)** concerns the need for stability and continuity in the child's education, family life and community. For the

reasons already stated under Factor 3, the need for stability and continuity in the [C]hildren's education, [*sic*] and family life favors the Agency.

**Factor (5)** concerns the availability of extended family. [Maternal Grandmother] admittedly has no extended family in New Hampshire but moved to New Hampshire for financial incentives and to improve her life. However, her children[,] who also moved to New Hampshire to be closer to Maternal Grandmother[,] have serious addiction issues which clearly affect their availability as extended family. The Agency foster parents are always supervised by the Agency and provide ample continuous care for the [C]hildren. This factor also favors the Agency.

**Factor (6)** concerns the child's sibling relationships. Currently the [C]hildren are together in foster care. We agree that [Maternal Grandmother's] aspirations to raise the [C]hildren in a bonded familial setting is best, but at this moment the bond among the [C]hildren is still being maintained with [Maternal Grandmother] and her family by the foster parents and the Agency. This factor favors the Agency.

[With regard to 23 Pa.C.S.A. § 5328(a)(7), the trial court found that the Children are too young to express a preference; the trial court found 23 Pa.C.S.A. § 5328(a)(8) inapplicable; and it found that 23 Pa.C.S.A. § 5328(a)(9) favored Maternal Grandmother.]

**Factor (10)** concerns which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child. This factor favors the Agency because of the time constraints upon [Maternal Grandmother's] employment and her financial circumstances. [Maternal Grandmother] works full-time from 3:00 p.m. until 11:00 p.m. as a [r]egistered [n]urse. It will be necessary for child care to be secured for [the Children]. [Maternal Grandmother] presented evidence that she is able to provide child care service through a local caretaker[;] however, it is important that[,] before the stability of the [C]hildren is placed at risk by awarding legal and physical custody to [Maternal Grandmother,] it is imperative that the [ICPC] Request be completed, and that[,] upon receipt of the [ICPC] Request report, a Judicial Review Hearing can be schedule [*sic*] with the Juvenile Division of the

Court of Common Pleas of Schuylkill County to then consider [Maternal Grandmother's] request for custody.

**Factor (11)** concerns the proximity of the residences of the parties. This factor is not applicable. [Maternal Grandmother] and the [P]arents reside in New Hampshire. The [C]hildren are currently residing in Schuylkill County in foster care. The [P]arents moved from Schuylkill County after having lived and resided in Schuylkill County for a significant time to follow [Maternal Grandmother] to New Hampshire when the [C]hildren were placed in foster care. The Dependency Court found the [P]arents' drug addiction prevents them from properly caring for the [C]hildren. [Maternal Grandmother] also moved from Schuylkill County to improve her lifestyle. The parties are now in New Hampshire leaving the [C]hildren with the Agency while this custody action is pending.

**Factor (12)** concerns each party's availability to care for the child or ability to make appropriate child care arrangements. This factor was covered in Factors 10 and 11.

**Factor (13)** concerns the level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party. [Maternal Grandmother] and Mother and Father have no conflict[,] as Mother and Father fully support [Maternal Grandmother's] request for legal and physical custody and the Agency has indicated [its] intention to terminate its involvement should [Maternal Grandmother] be awarded custody.

**Factor (14)** concerns the history of drug or alcohol abuse of a party or member of a party's household. As already mentioned, it is important to allow the Agency to complete the [ICPC] Request and obtain a report to verify [Maternal Grandmother's status[,] since the Agency has had a history with her and [Maternal Grandmother's own children [Mother and Maternal Uncle] have substance abuse problems and are in need of intensive treatment. This factor favors the Agency.

**Factor (15)** concerns the mental and physical condition of a party or member of a party's household. As already mentioned, it is important to allow the [A]gency to complete the

[ICPC] Request and obtain a report to verify information concerning [Maternal Grandmother] and [Maternal Grandmother's] household. This factor favors the Agency.

Trial Court Opinion, 12/18/19, at 7-12 (emphasis in original).

Pursuant to 23 Pa.C.S.A. § 5328, the trial court appropriately gave weighted consideration to those factors which affect the safety of the Children. *See* Trial Court Opinion, 12/18/19, at 7-8, 12. In particular, the trial court considered the Children's safety in relation to the factors that involved Mother's and Father's history of drug use, which remained active at the time of the hearing. *Id.* The court also considered Maternal Grandmother's history with CYS while raising Mother and Mother's brother, who both had been adjudicated dependent and had truancy issues while in school, and who both have remained active drug users. *Id.* Additionally, the record evidences CYS's concern about Mother's illnesses when she was in school and in Maternal Grandmother's care and custody. *Id.* at 12. The trial court found that Maternal Grandmother had a history of being uncooperative with CYS and having instability in her housing for her family, and a history of a suspected domestic violence situation with a prior paramour and drug-use situation of her own. *Id.*

Further, the trial court expressed legitimate concern that Maternal Grandmother would make a bi-weekly drive from New Hampshire to Pennsylvania to visit the Children with the Parents, and that the Parents tested positive for methamphetamines when in Pennsylvania, yet Maternal

Grandmother claimed to be unaware that they were actively using drugs. *Id.* at 13. This denial on her part is concerning, and bears further exploration by the trial court before it is assured that Maternal Grandmother will not entrust the Children to the care of Parents in New Hampshire after they are outside the jurisdiction of the Commonwealth.

Moreover, the trial court found that although Maternal Grandmother is presently employed as a registered nurse in New Hampshire, her employment requires her to be out of her home, at a minimum, between 3 p.m. and 11 p.m. daily. *Id.* at 8-10. While Maternal Grandmother had spoken with a potential childcare provider who could come into her home and with a daycare center, she did not have a firm childcare plan in place for the three Children, who were under the age of three years old at the time of the hearing. *Id.* at 10-11. Unlike a situation in which a single parent must work and arrange for childcare while away from the children, the trial court has a legitimate concern for the safety of the Children if Maternal Grandmother were to entrust them to Mother and Father, or to her son, all of whom have known drug abuse issues. *Id.* at 7-12. These individuals would be her only extended family available to assist her in caring for the Children if her childcare were unavailable. *Id.* at 9.

Furthermore, Maternal Grandmother's failure to complete an ICPC Request is a matter which was appropriate for the trial court to consider pursuant to 23 Pa.C.S.A. § 5328(a)(16). Under the ICPC, Schuylkill County

CYS must have an ICPC request completed in order to assess Maternal Grandmother as a placement option. *See* 62 P.S. § 761; 55 Pa. Code § 3130.41. As the sending state, Pennsylvania is required to obtain state approval from the receiving state, New Hampshire, prior to sending the Children to placement in another state. *See* 55 Pa. Code § 3130.41. Under the circumstances, the trial court appropriately required Maternal Grandmother to complete the ICPC so that CYS could obtain more information about the safety of the Children before the court in Pennsylvania would send them to be in her custody in New Hampshire.[7] We conclude that the trial court appropriately analyzed the custody best interest factors under section 5328(a) of the Custody Act, weighing those factors between custody remaining with CYS or being awarded to Maternal Grandmother. *See* *C.A.J.*, *supra*. Accordingly, we affirm the Order of the trial court.

Order affirmed.

_____

[7] Notably, the trial court did not preclude Maternal Grandmother from filing a new complaint for custody, or even from seeking to adopt the Children, after the completion of the ICPC process, as it dismissed her custody Complaint without prejudice. At that point, the trial court would have the information necessary to determine the safety of the Children if Maternal Grandmother were awarded custody or permitted to adopt them.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/15/2020