J-A10006-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| CASSANDRA M. BAILEY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| HALLUM O. BAILEY | : | |
| | : | |
| Appellant | : | No. 2813 EDA 2022 |

Appeal from the Order Entered October 6, 2022
In the Court of Common Pleas of Philadelphia County
Domestic Relations at No(s): 0C1801104

BEFORE:   PANELLA, P.J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.:                **FILED JUNE 27, 2023**

Hallum O. Bailey ("Father") appeals from the order granting the petition to modify custody filed by Cassandra M. Bailey ("Mother"), and directing that that Mother would have sole legal custody, for two years, regarding educational decisions for their daughter C.B. ("Child"), born in May 2018.[1] Father argues that the trial court erred in awarding sole legal custody

---

[*] Former Justice specially assigned to the Superior Court.

[1] Although this appeal involves a custody action, we will use the parties' names in the caption "as they appeared on the record of the trial court at the time the appeal was taken." Pa.R.A.P. 904(b)(1). Notably, "upon application of a party and for cause shown, an appellate court may exercise its discretion to use the initials of the parties in the caption based upon the sensitive nature of the facts included in the case record and the best interest of the child." Pa.R.A.P. 904(b)(2); **see also** Pa.R.A.P. 907(a). Neither party has applied to this Court for the use of initials in the caption. We will, however, refer to the minor involved in this custody dispute by her initials or as "Child" to protect her identity.

regarding educational decisions without a pending petition seeking such a change; awarding sole legal custody for educational decisions without holding a hearing on that issue, in violation of his due process rights; considering facts outside the record; weighing certain evidence in rendering its decision; and failing to analyze the custody factors at 23 Pa.C.S.A. § 5328(a). We affirm.

The parties have engaged in a protracted high-conflict custody litigation over Child. *See* Trial Court Opinion, 12/27/22, at 1 n.1 (noting that between "August 15, 2018, when the initial custody complaint was filed and October 6, 2022, when th[e trial] court rendered the decision under appeal[,] there have been approximately 33 various filings related to custody."). Briefly, the parties were married in 2013 and Child was born in May 2018. Mother filed a complaint in divorce in August 2018, and the parties were ultimately divorced in September 2022. In October 2019, the trial court entered a custody order, which provided the parties would have shared legal and physical custody.

In January 2021, Mother filed a notice of relocation to Chester County from Philadelphia County, due to safety concerns. Notably, during this time Child attended preschool at Olde City Day School in Philadelphia. The trial court granted Mother permission to move if Child continued to attend school in Philadelphia, Child continued to receive her health care in Philadelphia, and the custody exchanges continued to take place in Philadelphia.

In December 2021, Mother filed a petition to modify custody, seeking to enroll Child in a different daycare due to significant concerns with Olde City

Day School, including ongoing Philadelphia Department of Human Services ("DHS") citations, increased staff turnover, and lack of academic programming. The trial court held multiple hearings on the petition, wherein the parties addressed, *inter alia*, Olde City Day School, the parties' ability to make educational decisions about Child; and the selection of a new school if Olde City Day School was not suitable. On October 6, 2022, the trial court entered an order, unenrolling Child from Olde City Day School immediately; placing Child in a new preschool; granting the parties continued shared physical custody and shared legal custody except that Mother would have sole legal custody regarding education for the 2023-2024 and 2024-2025 school years (kindergarten and 1st grade); and finding the location of Child's future school options would not be limited to Philadelphia County. Father filed this timely appeal and a Pa.R.A.P. 1925(b) concise statement.

On appeal, Father raises the following questions for our review:

1. Did the trial court abuse its discretion and commit an error of law in granting, *sua sponte*, Mother sole legal custody regarding all educational issues involving the Child for a period of two (2) years: (1) without a pending petition before the court requesting that the Court modify legal custody to sole legal custody regarding all educational issues involving the Child; and (2) with no testimony from Mother, or request from Mother on the record, for sole legal custody regarding all educational issues involving the Child?

2. Did the trial court abuse its discretion and commit an error of law in entering an order, *sua sponte*, giving Mother sole legal custody regarding all educational issues involving the Child for two (2) years without a hearing on legal custody in violation of Father's constitutional right to procedural due process?

3. Did the trial court abuse its discretion and commit an error of law by depriving Father of his constitutional right to procedural due process by concluding and finding that "it is in the best interest and permanent welfare of the child to expand the educational horizons beyond those offered in Philadelphia County" when Mother's petition pending before the court emphasized, in accordance with the July 20, 2021 order, and consistent with Father's position, that the selected school be in Philadelphia County?

4. Did the trial court abuse its discretion and commit an error of law in violating Father's constitutional right to procedural due process, by failing to analyze all 16 custody factors set forth in 23 Pa.C.S.A. § 5328(a) in entering its order giving sole legal custody to Mother for all educational issues involving [Child] for a period of two (2) years?

5. Did the trial court abuse its discretion and commit an error of law by focusing on aspects of the case that have no relationship to Father's ability to make appropriate decisions for the Child?

6. Did the trial court abuse its discretion and commit an error of law in granting, *sua sponte*, Mother sole legal custody regarding all educational issues involving the Child for two (2) years by considering facts that were not in the record and making conclusions not supported by the record or the testimony of the parties?

Appellant's Brief at 5-6 (issues reordered).

Our standard of review is deferential:

We review a trial court's determination in a custody case for an abuse of discretion, and our scope of review is broad. Because we cannot make independent factual determinations, we must accept the findings of the trial court that are supported by the evidence. We defer to the trial judge regarding credibility and the weight of the evidence. The trial judge's deductions or inferences from its factual findings, however, do not bind this Court. We may reject the trial court's conclusions only if they involve an error of law or are unreasonable in light of its factual findings.

*C.A.J. v. D.S.M.*, 136 A.3d 504, 506 (Pa. Super. 2016) (citation omitted).

- 4 -

"With any child custody case, the paramount concern is the best interests of the child." **M.J.M. v. M.L.G.**, 63 A.3d 331, 334 (Pa. Super. 2013) (citation omitted). "This standard requires a case-by-case assessment of all the factors that may legitimately affect the physical, intellectual, moral and spiritual well-being of the child." **Id.** (citation omitted).

As they are interrelated, we will address Father's first and second claims together.[2] We begin by noting that Father's arguments often broadly reference "legal custody." However, the trial court's order focuses specifically on the right to make education-related decisions for Child for two years. While this is certainly a subset of the rights involved in legal custody, it is important to highlight that in all other respects, the order appealed from did not alter the status quo of shared legal custody.

Father contends that the trial court violated his due process rights by granting Mother legal custody over education decisions without a petition, testimony from Mother, or request by Mother on the record to this effect. **See** Father's Brief at 14, 18. Father argues he had no notice that any aspect of legal custody of Child was at issue in this proceeding. **See id.** at 17, 18, 20.

---

[2] We note with disapproval that in his second claim, Father incorporates by reference his argument from his first claim. **See** Father's Brief at 19. Notably, "incorporation by reference" is an "unacceptable manner of appellate advocacy for the proper presentation of a claim for relief to our Court." **Commonwealth v. Briggs**, 12 A.3d 291, 342 (Pa. 2011); **accord Franciscus v. Sevdik**, 135 A.3d 1092, 1097 n.6 (Pa. Super. 2016).

Father highlights that Mother requested Child be enrolled in a different preschool and never sought legal custody over education decisions, emphasizing that Mother did not request such a change in her proposed order. *See id.* at 17. Father further asserts that legal custody was not addressed at the hearing on Mother's petition, and the trial court elicited no testimony from the parties on legal custody. *See id.* at 17, 19-20. To support his argument, Father relies on ***P.H.D. v. R.R.D.***, 56 A.3d 702, 707-08 (Pa. Super. 2012) (vacating part of the contempt order that purported to relate to a custody modification, because father had no notice that custody would be an issue at the contempt hearing, which violated his due process rights). *See* Father's Brief at 16-17, 18, 19.

"A question regarding whether a due process violation occurred is a question of law for which the standard of review is *de novo* and the scope of review is plenary." ***S.T. v. R.W.***, 192 A.3d 1155, 1160 (Pa. Super. 2018) (citation omitted). "In custody hearings, parents have at stake fundamental rights: namely, the right to make decisions concerning the care, custody, and control of their child." *Id.* "Due process must be afforded to parents to safeguard these constitutional rights." *Id.* at 1161. The fundamental components of due process are "[f]ormal notice and an opportunity to be heard." *Id.* (citation and emphasis omitted). "[P]rocedural due process requires, at its core, adequate notice, opportunity to be heard, and the chance to defend oneself before a fair and impartial tribunal having jurisdiction over

the case." ***Id.*** (citation omitted). "Due process is flexible and calls for such procedural protections as the situation demands." ***Id.*** (citation omitted).

"[G]enerally, the appropriate manner in which to request a modification of a custody order is to file a petition for modification in compliance with Pa.R.C.P. 1915.15[.]" ***C.A.J.***, 136 A.3d at 507. However, "this does not prevent the trial court, under appropriate circumstances to alter a custody/visitation Order when it is in the best interest of the child to do so." ***Id.*** (citation omitted). "[I]f notice of the proceeding adequately advises a party that custody will be at issue, a court may entertain the request to permanently modify a custody order after hearing in that proceeding." ***Id.*** (citation omitted); ***see also Langendorfer v. Spearman***, 797 A.2d 303, 309 (Pa. Super. 2002) ("Notice, in our adversarial process, ensures that each party is provided adequate opportunity to prepare and thereafter properly advocate its position, ultimately exposing all relevant factors from which the finder of fact may make an informed judgment." (citation omitted)).

Here, Mother filed a petition to modify custody, seeking to modify Child's preschool, noting it would be in Child's best interests to pick a new school. ***See*** Petition, 12/2/21, at 3-5. Father filed a response, requesting that the trial court deny the petition to modify. ***See*** Answer, 1/21/22. The trial court then scheduled hearings on this matter, specifying that a modification of custody would be at issue. ***See, e.g.,*** Trial Management Order, 6/14/22, at 1 ("A protracted custody hearing is scheduled … on September 28, 2022…); Order,

6/6/22, at 1 ("All parties are excused from appearing for the protracted hearing …. Mother's petition to modify … is hereby continued…"); Order, 4/25/22, at 1 ("Mother's petition to modify … is hereby continued …"); Order, 3/24/22, at 1 ("Mother's petition to modify custody .. is continued for further testimony …").

Further, the hearings centered on Mother's petition to modify custody. **See** N.T., 3/24/22, at 5 (wherein both parties acknowledge that the hearing was strictly about Mother petition to modify custody); **see also** N.T., 9/28/22, at 5. At the hearing, Father and Mother both testified as to Child's educational experiences at Olde City Day School and their respective conduct with regard to Child's education, including, *inter alia*, how the preschool was chosen, other schools they are considering, Child's experience at the school, and the fact that Olde City Day School has been cited for multiple violations by DHS. **See generally** N.T., 9/28/22, at 65-216; N.T., 3/24/22, at 13-60. Importantly, Father testified that he provided options to Mother regarding finding a good kindergarten and first grade for Child. **See** N.T. 9/28/22, at 135-36, 188. Further, Father, through his counsel, also cross-examined Mother and Mother's witnesses, Kristina Clark, the mother of a student who used to attend Olde City Day School, and Anita Preacher, the director of operations at Olde City Day School.

As a preliminary matter, the **P.H.D.** Court found a due process violation when a lower court modified a custody order although the only issue before it

was a contempt petition. **See P.H.D.** 56 A.3d at 707-08. By contrast, here, the parties knew that the hearings centered on Mother's petition to modify custody regarding educational decisions for Child. **See S.W.D. v. S.A.R.**, 96 A.3d 396, 405 (Pa. Super. 2014) (noting that "the filing of a proper petition also serves the important purpose of providing notice and an opportunity to be heard to satisfy the requirements of due process attendant to custody proceedings."). In fact, Father does not challenge that he filed an answer to the custody petition and the scheduling orders all specified that custody would be at issue at the hearing. Importantly, the trial court afforded Father an opportunity to be heard and to present his case regarding Child's best interest in choosing a school. **See S.T.**, 192 A.3d at 1161 (stating due process requires opportunity to be heard and chance to defend oneself in impartial tribunal having jurisdiction over matter).

Trial courts have the power to fashion appropriate custody awards when all parties are on notice. In fact, the Child Custody Act provides that trial courts may award different types of custody, including a change in legal custody, so long as they consider the factors set forth under 23 Pa.C.S.A. § 5328(a) in the best interests of the child. **See** 23 Pa.C.S.A. § 5323(a); **see also M.J.M.**, 63 A.3d at 334 (noting that the primary concern in any custody case is the best interests of the child). Notably, legal custody is defined as the right to make "decisions on behalf of the child, including, but not limited to, medical,

religious and **educational** decisions." ***See*** 23 Pa.C.S.A. § 5322(a) (emphasis added).

Here, it was apparent the parties had significant differences of opinion regarding Child's education. The trial court recognized that, as a consequence, only one party could have final decision authority on this issue at this time. ***See*** Trial Court Opinion, 12/27/22, at 20 ("In the case *sub judice*[,] it is abundantly clear that the parties were at an impasse on educational issues, and it was also clear based upon the behavior of the parties and the overall procedural posture of the case that [Child's] best interest would be served by one parent having the final say on educational issues for a period of two years."). Although Mother never explicitly requested a change to legal custody in her petition in this case, the authority to decide education decisions for Child was clearly the central issue being litigated.

Accordingly, Father's reliance on ***P.H.D.*** is misplaced and our review of the record confirms that the court did not deprive Father of due process during the relevant proceedings because Father had proper notice that custody would be at issue, and, as noted below, the trial court considered the Section 5328(a) factors. ***See C.A.J.***, 136 A.3d at 507 (stating that when "notice of the proceeding adequately advises a party that custody will be at issue, a court *may* entertain the request to permanently modify a custody order after hearing in that proceeding." (citation omitted, emphasis in original)).

In his next claim, Father claims that the trial court violated his due process rights by finding that it was in Child's best interests to look for educational opportunities outside those offered in Philadelphia County, highlighting that matter was not before the court and he was denied the opportunity to consider the merits of any schools outside Philadelphia County. *See* Father's Brief at 27-28. Father further emphasizes that the trial court's prior grant of Mother's relocation petition explicitly stated that Child would attend school in Philadelphia County. *See id.* at 27.

The trial court addressed Father's claim as follows:

> There is substantiated, credible and undisputed testimony in this matter that [Child] is exceptionally gifted. Such an exceptionally gifted child shall receive the benefit of school choice which will serve to advance and reinforce her exceptional gifts by expanding school choice beyond schools situated in Philadelphia County. The court noted that the parties' July [2]0, 2021 agreement limits the educational opportunities of this exceptional child to Philadelphia County, but was entered without prejudice to either part[y's] legal custody rights. The court finds that it is in the best interest and permanent welfare of [Child] to expand the educational horizons beyond those offered in Philadelphia County at this time.

Trial Court Opinion, 12/27/22, at 13 (capitalization omitted).

Here, because Mother filed a petition to modify the custodial order, the trial court was vested with jurisdiction to modify the existing order as required by Child's best interests. *See J.M. v. K.W.*, 164 A.3d 1260, 1268 (Pa. Super. 2017) ("[A]ll custody awards are temporary insofar as they are subject to modification by an ensuing court order any time that it promotes the child's best interest. Thus, by force of circumstances, no award of child custody is

permanent regardless of whether the order is styled as interim or final."). As noted above, Father was provided notice of the custody proceedings, that they would focus on the issue of Child's education, and he provided evidence at the hearings on the petition to modify. Father specifically testified that Child was "super smart" and could skip kindergarten. **See** N.T., 9/28/22, at 188-89. Therefore, the trial court's finding that it was in Child's best interests to have multiple options for education opportunities inside and outside of Philadelphia County due to her intelligence was not in error and Father's due process rights were not violated. **See J.W.**, 164 A.3d at 1268.

Additionally, Father contends that the trial court failed to analyze the 16 factors listed at Section 5328(a). **See** Father's Brief at 20-21. Father argues that although the trial court stated it considered the factors, it did not provide reasons for each of the factors on the record. **See id.** at 21.

The Custody Act provides a non-exhaustive list of the 16 factors a court is required to consider to determine the best interests of the child as follows:

**§ 5328. Factors to consider when awarding custody**

**(a) Factors.** - In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

"All of the best interest factors … are required to be considered by the trial court when entering a custody order." *D.Q. v. K.K.*, 241 A.3d 1112, 1118 (Pa. Super. 2020) (citation and brackets omitted). The trial court, as the finder of fact, determines "which factors are most salient and critical in each particular case." *M.J.M.*, 63 A.3d at 339 (citation omitted).

Additionally, in any custody action, the trial court must "delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.A. § 5323(d). "In expressing the reasons for its decision, there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." *D.Q.*, 241 A.3d at 1118 (citation and quotation marks omitted). "A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d)." *Id.* (citation omitted).

Here, the trial court stated that it "gave consideration to all of the statutory factors[.]" Trial Court Opinion, 12/27/22, at 19; *see also* Order, 10/6/22, at 7. However, the trial court found that factors 3, 4, 10, 11, 13, and 16 were critical in reaching its decision about Child's education. *See* Trial Court Opinion, 12/27/22; Order, 10/6/22, at 1-7; *see also M.J.M.*, 63 A.3d at 339.

- 14 -

Contrary to Father's argument, the trial court analyzed and weighed each of the critical factors regarding Mother's modification petition and found that it was in Child's best interests to grant sole legal authority over education decisions for a two-year period to Mother. ***See*** Trial Court Opinion, 12/27/22, at 20 (noting that the parties were at an impasse on educational issues, and based on the parties' behavior, Child's best interest would be served by Mother having the final say on educational issues for a two-year period); ***see also B.S.G. v. D.M.C.***, 255 A.3d 528, 534 (Pa. Super. 2021) (concluding the trial court properly granted Mother final decisions on schooling where the parents had reached an impasse and the best interest of the child required choices be made expeditiously than through repeated filings with the courts). As the trial court considered the Section 5328(a) factors and explained the reasons for its ruling, which met the requirements of Section 5323(d), ***see M.J.M.***, 63 A.3d at 339, Father's argument does not provide a basis for finding that the trial court abused its discretion.

Next, Father argues that the trial court abused its discretion by focusing on aspects of the case that have no relationship to his ability to make appropriate decisions for Child. ***See*** Father's Brief at 22. According to Father, the trial court preferred Mother's demeanor to his use of expressive terms during testimony. ***See id.*** at 23. Father asserts that the trial court improperly highlighted that Father characterized Mother's behavior as psychological and in misogynistic terms, and he used the term "fluffernutter" in rendering its

decision. *See id.* at 22. Father concludes that the trial court abused its discretion in utilizing these statements as justification to take away his legal custodial rights. *See id.* at 23.

Here, Father failed to establish either that the trial court used his expressive terms as reason to grant Mother legal custody over Child's education decisions for a two-year period or that the court fashioned a presumption in Mother's favor based upon her demeanor. The record demonstrates that the trial court weighed the testimony from Mother and Father, as well as the best interests of Child and her education.

While the trial court noted Father and Mother credibly testified that they desired what was best for Child, *see* Order, 10/6/22, at 6, it also found that Father "was evasive in his answers to many questions[.]" *Id.* at 3 (capitalization omitted). The trial court further emphasized the parties are engaged in a high conflict custody litigation and have "two diametrically opposed views of the facts and circumstances surrounding the upbringing and education of [Child]. The parties have alternate views and characterizations of virtually everything that happens and has happened." *Id.* at 6 (capitalization omitted); *see also id.* (noting it was imperative for the court to decide due to the parties' conflict and their "divergent views of reality will affect [Child] in the future as well as [Child] believing that since her parents hold two diametrically opposed views on everything, one must be right and one must be wrong." (capitalization omitted)).

In essence, Father is asking us to both reject the trial court's findings and credibility determinations in favor of the factual findings and credibility determinations that he proposes and reweigh the evidence. We decline his invitation to do so, because we cannot reweigh the evidence and "[w]e must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations." **M.J.M.**, 63 A.3d at 337 (citation omitted). Therefore, Father's claim is without merit.

In his final claim, Father contends that the trial court considered facts that were not in the record in rendering its decision. **See** Father's Brief at 24. Father highlights that the trial court repeatedly referenced a disagreement about bunny slippers as evidence of a breakdown in cooperation between the parties; however, Father argues that no such dispute existed because the parties agreed that the slippers were for Child at preschool. **See id.** at 24-25. Additionally, Father claims the trial court mischaracterized his testimony regarding Child's male teacher and ignored his position on the issue that focused on diversity and representation. **See id.** at 25. Father also asserts that the trial court speculated that Child may develop anxiety or panic issues due to the custody litigation and did not hear any testimony about potential kindergartens outside Philadelphia County. **See id.** at 26-27. Father further maintains that the trial court erred in finding Mother, who had previously been

found in contempt on two occasions, to be compliant with the court's new custody order. **See id.** at 26.

As a preliminary matter, Mother acknowledges the trial court mistakenly found that the parties were in conflict about the bunny slippers. **See** Mother's Brief at 59. Mother argues the trial court confused the bunny slippers with an incident regarding whether Child should read Mother's or Father's version of a book at preschool to demonstrate the high level of conflict between the parties. **See id.** at 58-59.

Upon our review of the record, we agree that the parties did not dispute the use of slippers at preschool. However, the trial court cites other evidence that establishes the parties' conflict, including Child having to do two of everything at school, including projects, and having two Halloween costumes, Father's testimony characterizing Mother as hysterical and her behavior as histrionic, and his claim that Mother's claims regarding Olde City Day School were fabricated. **See** Order, 10/6/22, at 2-4; **accord** Trial Court Opinion, 12/27/22, at 4. Moreover, the record confirms the trial court's finding that the parties have divergent views on everything that has happened and how best to raise and educate Child. **See** Order, 10/6/22, at 6. Father does not challenge the fact that the parties are in conflict regarding custody or Child's education. Therefore, we conclude that the trial court's mistaken inclusion of the slippers in the list of disputes between the parties does not establish error.

Next, regarding Father's claims that the trial court gave improper weight to his statement about Child's male teacher at Olde City and Mother's prior contempt orders, we reiterate that we must defer to the fact-finder for issues concerning credibility and weight of the evidence. **See M.J.M.**, 63 A.3d at 337. Father again appears to be requesting this Court to make new findings or reweigh the evidence. We decline to do so. **See C.R.F. v. S.E.F.**, 45 A.3d 441, 443 (Pa. Super. 2012) (noting this Court must "accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations." (citation omitted)). Here, the trial court weighed Father's evidence regarding Olde City Day School. **See** Order, 10/6/22, at 4-5, 6. Further, the trial court did not give much weight to the prior contempt citations, noting that Mother was found in contempt on two occasions in the divorce action but neither party had been found in contempt on custody matters. **See id.** at 5. The trial court's conclusions, in light of its sustainable findings on each of the custody best-interest factors, are not unreasonable, nor did the trial court commit an error of law. **See S.T.**, 192 A.3d at 1160 (stating the ultimate "test is whether the trial court's conclusions are unreasonable as shown by the evidence of record." (citation omitted)).

Moreover, the trial court's statement that Child may develop anxiety or panic was made in the context of the parties' conflict in resolving any issue:

> The file in this matter already fills one banker storage box. If the current conduct continues, [] Child may develop anxiety, panic,

and reality issues. The [trial] court cannot help but think that the parents' divergent views of reality will affect [] Child in the future as well as [] Child believing that since her parents hold two diametrically opposed views on everything, one must be right and one must be wrong. This will lead to confusion as to which parent to listen to, which parent to believe[,] and which parent has her best interest at heart. … The substantial evidence shows that Mother and Father do not work together well. … The parties are able to agree on very little, including the method upon which they will rely in order to achieve their mutual goal of providing what is educationally best for [] Child now.

Order, 10/6/22, at 6 (capitalization omitted). The trial court was again merely highlighting the parties' conflict and the affect it could have on Child. We find no abuse of discretion in this regard.

Finally, the trial court's finding that Child could be placed in a school outside Philadelphia County is not an abuse of discretion. The trial court noted the credible evidence establishing that Child is "exceptionally gifted," and that such a gifted child should "receive the benefit of school choice which will serve to advance and reinforce her exceptional gifts." Order, 10/6/22, at 8 (capitalization omitted). The trial court's conclusion was merely serving the best interests of Child and Father's claim to the contrary does not establish an abuse of discretion. *See M.J.N. v. J.K.*, 169 A.3d 108, 112 (Pa. Super. 2017) (noting that the best interests of a child "considers all factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well-being." (citation omitted)).

In light of the foregoing, we conclude that the trial court did not abuse its discretion in awarding Mother legal custody over Child's educational decisions for a two-year period.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/27/2023