2025 PA Super 157

| | | |
|---|---|---|
| IN THE INTEREST OF: L.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: ALLEGHENY COUNTY OFFICE OF CHILDREN, YOUTH AND FAMILIES | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1218 WDA 2024 |

Appeal from the Order Entered September 13, 2024
In the Court of Common Pleas of Allegheny County Juvenile Division at
No(s): CP-02-DP-0000491-2021

BEFORE: KUNSELMAN, J., NICHOLS, J., and LANE, J.

OPINION BY LANE, J.: **FILED: July 23, 2025**

The Allegheny County Office of Children, Youth, and Families ("CYF") appeals from the order that: (1) denied its motion for special relief requesting that the dependent, female child, L.W. ("Child"), born in September 2007, be returned to Pennsylvania from North Carolina, where she was visiting Q.W. ("Mother"); and (2) closed Child's dependency case.[1] Upon review, we affirm.

We glean the following relevant factual and procedural history from the certified record. CYF has a long history with this family. Relevant to this appeal, Child is autistic, non-verbal, and has a history of violent outbursts. **See** N.T., 6/12/24, at 6. In June 2021, Mother, who was residing out-of-state, brought Child to Allegheny County, Pennsylvania, to stay with Child's biological father, P.P. ("Father") for the summer. **See** Shelter Care Order,

---

[1] By separate orders, the court also terminated court supervision of Child and entered a custody order awarding Mother sole legal and primary physical custody of Child. CYS has not appealed from these orders.

7/7/21. Father contacted CYF later that same month. *See id*. Father, who was struggling with substance abuse issues, informed CYF that he could not care for Child. *See* Dependency Petition, 7/6/21, at ¶ 7. As CYF was unsuccessful in immediately contacting Mother, a caseworker brought Child to UPMC Western Psychiatric Hospital where, following an evaluation, she was committed. *See id*. at ¶ 8-11.

Thereafter, Mother reported to CYF that, upon Child's discharge from psychiatric care, she was unwilling to continue to care for her. On June 25, 2021, CYF filed a shelter care application on behalf of Child.[2] By shelter care order dated June 28, 2021, and entered on July 7, 2021, the trial court granted legal and physical custody of Child to CYF. Upon her discharge from psychiatric care in July 2021, CYF placed Child in foster care with W.W. ("foster mother"), where she remained throughout the dependency proceedings.[3] *See* N.T., 6/12/24, at 17-18.

On July 6, 2021, CYF filed a dependency petition alleging, *inter alia*, that Child was without proper parental care or control pursuant to 42 Pa.C.S.A. § 6302(1). Following two continuances, on October 20, 2021, the court

---

[2] On the same date, the trial court appointed KidsVoice as Child's guardian *ad litem* ("GAL").

[3] The record reflects that the foster mother previously adopted a child who resided with her for the majority of Child's dependency. *See* N.T., 6/12/24, at 4.

conducted a hearing on CYF's petition, after which, it adjudicated Child dependent pursuant to section 6302(1).

The court established Child's permanency goal as reunification. The trial court held regular permanency review hearings throughout the duration of the dependency case, from March 2022 to August 2024. The court consistently rated Mother's compliance with her permanency plan as moderate or substantial, as Mother cooperated with CYF, attended drug and alcohol treatment, and submitted to a mental health evaluation which did not result in further recommendations. **See generally** Permanency Review Orders. Mother also participated in virtual visitation with Child throughout the dependency proceedings because Mother was residing and working in North Carolina. In May 2023, Mother visited Child in Pittsburgh, and it "went very well." Permanency Review Order, 6/13/23. Child also visited Mother in North Carolina for a weekend in early 2024. **See** N.T., 6/12/24, at 8. CYF confirmed that the visitations between Mother and Child "go well." **Id**.

Importantly, at the outset of the dependency case, the court had instructed CYF to initiate a request pursuant to the Interstate Compact for the Placement of Children ("ICPC"), 62 P.S. § 761, with North Carolina.[4] On November 1, 2022, the court learned that CYF had not referred an ICPC

---

[4] The ICPC is an agreement among the states, the District of Columbia, and the Virgin Islands to cooperate with each other in the interstate placement of children. **See** 62 P.S. § 761 at Article I.

request to North Carolina for the purpose of placing Child, and directed that it do so immediately. **See** Permanency Review Order, 11/1/22. On June 13, 2023, the Agency reported to the trial court that North Carolina had denied its initial ICPC request due to Mother's lack of housing and failure to identify autism resources for Child. **See** Permanency Review Order, 6/13/23. CYF informed the court during the June 12, 2023 permanency hearing that it would resubmit the ICPC request to North Carolina as Mother had allegedly remedied these issues, insofar as she had obtained appropriate housing and identified autism resources for Child. **See id**.

In September 2023, North Carolina denied CYF's second ICPC request. **See** Permanency Review Order, 10/24/23. CYF informed the court during the October 24, 2023 permanency hearing that North Carolina denied the second ICPC request because Mother's younger biological daughter, not subject to this appeal, had been removed from her care by a North Carolina child welfare agency at the beginning of January 2023.[5] In addition, the second ICPC

---

[5] Mother has a fifteen-year-old daughter, H.W., from a different father, that resides with her in North Carolina. **See** N.T., 6/12/24, at 12-13. A North Carolina child welfare agency removed H.W. from Mother's care at some point during Child's dependency case. Nevertheless, by the time of the subject proceeding in this case, H.W. had been residing with Mother for more than one year, and H.W.'s dependency case was closed. **See id**. The details of H.W.'s removal and subsequent reunification are not present in the certified record.

request was denied because Mother failed to verify her income, and she "lacked a support system" in North Carolina. *See id*.

In May 2024, after learning that CYF had not resubmitted another ICPC request, Mother filed a motion requesting that the trial court sign an order for expedited ICPC placement, and CYS thereafter lodged a third ICPC request with North Carolina.

At the June 12, 2024 permanency review hearing, the court heard testimony from CYF caseworker, Shamara Hopkins ("Ms. Hopkins"), as well as from Mother and Child's foster mother. Ms. Hopkins testified regarding an incident with the foster mother wherein her adopted child had "absconded from the home" after sustaining a black eye under unknown circumstances.[6] N.T., 6/12/24, at 4. A Childline investigation resulted in an "unfounded" designation, but the child had not been returned to foster mother's home. *See id*. at 4-5. Further, Ms. Hopkins reported that in December 2023, the foster mother was charged with driving under the influence ("DUI"). *See id*. at 5. Ms. Hopkins testified that the foster mother was attending a drug and alcohol program as a result of her DUI. *See id*.

At the same hearing, Ms. Hopkins testified that North Carolina had not responded to the third ICPC request. *See id*. at 7. She stated that North

---

[6] The trial court originally learned of the foster mother's adoptive daughter leaving her home during the January 23, 2024 permanency review hearing. *See* Permanency Review Order, 1/23/24.

Carolina assessed Mother's home the week prior to the permanency hearing, but she did not know the result of the assessment. Ms. Hopkins also revealed that Mother was in contact with the Autism Society in North Carolina to ensure Child had services if she began living with her full-time. *See id*. Ms. Hopkins testified that she believed that Mother had corrected the issues that resulted in the second ICPC denial, *i.e.*, Mother verified her income, the child welfare agency had returned her other daughter to her care, and Mother had identified a support system. *See id*. at 19. Importantly, Ms. Hopkins testified that, if Mother had resided in Pittsburgh, she would recommend reunification. Thus, Ms. Hopkins acknowledged that the only barrier preventing Child from reunifying with Mother was the still-pending third ICPC request. *See id*. at 11.

Mother also testified at the June 2024 permanency review hearing, and stated that she provided everything required of her to complete the third ICPC request for Child's placement with her. *See id*. at 22. Specifically, Mother testified that she contacted the Autism Society of North Carolina and learned that Child would need to be evaluated to be eligible for educational and other services. *See id*. at 23-24. Mother testified that, upon Child's return to her care, she would take Child for the requisite evaluation. *See id*.

At the conclusion of the June 2024 hearing, the court stated on the record the following:

> [G]iven that we don't know what North Carolina is going to
> do, although they do have new information, and if we sit here and

wait for months and they deny the ICPC, we would be in the same situation. [M]y question is why wouldn't I just close the case and provide a custody order for [M]other's custody? That way we don't have to deal with the ICPC. ***[G]iven the testimony [from] the [A]gency, if [Mother] lived in Allegheny County, then they would have no issues with closing the case and return[ing] [Child] to [Mother], [] and we're basically just waiting for the ICPC to get approved[.]*** Once it does get approved, she's going [] to North Carolina.

[I] guess I don't have any problem waiting particularly, but [] if [North Carolina denies the ICPC request], then I'm going to close the case and issue a custody order.

***Id***. at 20-21 (emphasis added).

By permanency review order dated June 12, 2024, the trial court permitted Child to visit Mother in North Carolina for summer vacation. However, because Child was in summer school, she did not go to North Carolina until August 11, 2024. ***See id***. at 27-28. Child's first day of the new school year in Allegheny County was scheduled to commence on September 2, 2024. On September 3, 2024, CYF filed the subject motion for special relief wherein it requested that Child be returned to Pennsylvania pending the approval of the third ICPC request. ***See*** CYF Motion for Special Relief, 9/3/24. In its motion, the Agency alleged that Child's presence in North Carolina with Mother violated the ICPC because it was effectively a "placement" yet the third ICPC request was still pending. ***See id***.

On September 11, 2024, the trial court conducted a hearing on CYF's motion. By that time, Child had been in North Carolina with Mother for approximately one month. CYF's counsel informed the trial court that North

- 7 -

Carolina had informally denied the third ICPC request and would be sending the formal denial to CYF. *See* N.T., 9/11/24, at 3-4. Further, the GAL informed the court during the hearing that Child could not return to the care of the foster mother in Allegheny County because her home was decertified as a foster home since Child had been in North Carolina. *See id*. at 7-8.

The trial court ultimately concluded on the record, as follows:

> We have a record that shows [Child has] been with [Mother], that [Mother] has taken her to the Autism Society, that she has attempted to get her in school or has gotten her in school and that she'll be going to Statesville High School in North Carolina.
>
> [Mother] has appeared for these hearings on Teams. [Mother] came and [accepted Child] for the visit. I am unaware of any goal that [Mother] has not completed which led to the circumstances of [Child] being removed in the first instance, so I'm satisfied that she no longer needs to be in the system.
>
> [Child] is no longer a dependent child, and the matter [is] closed, and I'll issue a custody order giving full physical and legal custody of [Child] to [Mother.]

*Id*. at 18-19.

On September 12, 2024, the court entered an order awarding Mother primary physical custody and sole legal custody of Child. On September 13, 2024, the court entered an order denying CYF's motion for special relief and closing the dependency action. *See* Order Denying CYF's Motion, 9/13/24. By separate order entered on September 13, 2024, the trial court terminated supervision of Child because "[C]hild has been reunified with Mother and the

circumstances which necessitated the dependency adjudication and placement have been alleviated." Termination of Supervision Order, 9/13/24.

CYF timely filed a notice of appeal solely from the order denying CYF's motion for special relief and closing the dependency matter and attached thereto a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The trial court thereafter authored a Rule 1925(a) opinion.

On appeal, CYF raises the following issues for our review:

1. Whether the trial court abused its discretion and/or erred as a matter of law regarding the ICPC by reunifying the dependent child with her non-custodial parent in North Carolina and closing the dependency case when North Carolina had not approved Pennsylvania's placement request, and North Carolina had previously denied two placement requests, and a third placement request was pending?

2. Whether the trial court abused its discretion and/or erred as a matter of law regarding the ICPC when the trial court denied the request of CYF to return Child to Pennsylvania after the trial court placed Child with her non-custodial parent in North Carolina and North Carolina had not approved a placement request from Pennsylvania?

CYF's Brief at 4.

Our standard of review for dependency cases is as follows:

The standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In the Interest of J.M.*, 327 A.3d 1271, 1273 (Pa. Super. 2024). To the extent that CYF's issues raise a question of law, our standard of review is *de novo*. *See In the Interest of A.D.-G.*, 263 A.3d 21, 27 (Pa. Super. 2021).

The ICPC "governs the transfer and continued supervision of children who are moving between states for the purpose of adoption, foster care, or institutional placement." Pennsylvania Dependency Benchbook, § 4.4.2 at 4-6 (Rev. 2024). The regulations provide that "[u]nder the provisions of the [ICPC], the county agency shall [a]pply for and receive approval from the receiving state prior to sending a child to a placement in another state." 55 Pa. Code § 3130.41(2)(i). The relevant provisions of the ICPC are as follows:

**CONDITIONS FOR PLACEMENT**

**(a)** No sending agency shall send, bring or cause to be sent or brought into any other party state, any child for placement in foster care or as a preliminary to a possible adoption unless the sending agency shall comply with each and every requirement set forth in this article and with the applicable laws of the receiving state governing the placement of children therein.

* * * *

**RETENTION OF JURISDICTION**

**(a)** *The sending agency shall retain jurisdiction over the child sufficient to determine all matters in relation to the custody, supervision, care, treatment and disposition of the child which it would have had if the child had remained in the sending agency's state until the child is adopted, reaches majority, becomes self-supporting, or is discharged with the concurrence of the appropriate authority in the receiving state.* Such jurisdiction shall also include the power to effect or cause the return of the child or its transfer to another location and custody pursuant to law. The sending agency shall continue to have financial responsibility for

- 10 -

support and maintenance of the child during the period of the placement. Nothing contained herein shall defeat a claim of jurisdiction by a receiving state sufficient to deal with an act of delinquency or crime committed therein.

62 P.S. § 761 (emphasis added). The ICPC defines "placement," in relevant part, as "the arrangement for the care of a child in a family, free or boarding home, or in a child caring agency or institution. . . ." *Id*.

As CYF's issues on appeal are inter-related, we will address them together. CYF argues that the trial court erred in denying CYF's request to return Child to Pennsylvania, reunifying Child with her non-custodial parent in North Carolina, and closing the dependency case when Child's presence in North Carolina constituted an ICPC violation. In support of its argument, CYF first asserts that the ICPC is applicable for "placement of dependent children with non-custodial, out-of-state parents," and that trial courts "typically wait for ICPC approval by receiving states before placing dependent children with out-of-state parents." CYF's Brief at 21 (*citing*, in part, *In the Interest of F.S.*, 222 A.3d 859 (Pa. Super. 2019) (unpublished memorandum); *In re T.M.H.*, 328 A.3d 528 (Pa. Super. 2024) (unpublished memorandum)).[7]

---

[7] In asserting that the ICPC is applicable to non-custodial parents, CYF relies upon *D.Q. v. K.K.*, 241 A.3d 1112 (Pa. Super. 2020), wherein this Court affirmed, in part, the trial court's order that required the children's grandmother to submit an ICPC request where she sought legal and primary physical custody of the *dependent* children while residing in New Hampshire. In its Rule 1925(a) opinion, as quoted *infra*, the trial court aptly distinguishes *D.Q.* rendering it inapplicable to the case *sub judice*.

*(Footnote Continued Next Page)*

- 11 -

Second, CYF contends that Child's presence in North Carolina "constituted a placement, not a visit."[8]  CYF's Brief at 27.  As such, CYF asserts that "without an approved ICPC placement request, Child's placement in North Carolina violated the ICPC," and that the court erred by not remedying the violation by returning Child to Pennsylvania.  *Id*. at 40-41.  Finally, CYF baldly asserts that "[t]erminating the dependency case did not cure nor negate the current ICPC violation, and case closure prior to remedying the ICPC violation was improper."  CYF's Brief at 37.

In her appellee brief, Mother contends that, based upon the trial court's finding that Child was no longer dependent, the ICPC no longer applied to Child.  *See* Mother's Brief at 30-31.  Mother further asserts that even if Child had remained dependent, the ICPC does not apply to her because the plain

---

CYF also attempts to distinguish the instant case with a non-precedential decision of this court, *In the Interest of E.C.*, 185 A.3d 1096 (Pa. Super. 2018) (unpublished memorandum).  Pa.R.A.P. 126(b) provides that non-precedential decisions of this Court may be cited for their persuasive value if filed after May 1, 2019. As this case was filed prior to May 1, 2019, we cannot consider it.

[8] In this regard, CYF relies on Regulation No. 9 from the ICPC regulations promulgated by the Association of Administrators of the Interstate Compact on the Placement of Children ("AAICPC").  CYF asserts that the AAICPC is "a governmental entity [that], via statutory authority, carries out the rules and terms of the ICPC more effectively."  CYF's Brief at 23 (quotation marks and citation omitted).  CYF argues that Child's stay with Mother was a placement because, pursuant to Regulation No. 9, visits and placements "'are distinguished on the basis of *purpose, duration, and the intention* of the person or agency with responsibility for planning for the child as to the child's place of abode.'"  CYF's Brief at 27-28, 32 (emphasis in original) (citing ICPC Regulation No. 9(1)).

language of the statute does not apply to a non-custodial parent. ***See id***. at 34-40. Relatedly, Mother argues that regulations that expand the ICPC to include some parents contradicts the plain language of the statute and therefore, the statute must govern. ***See id***. at 40-41. Finally, Mother concludes that applying the ICPC to out-of-state parents is unconstitutional because it infringes on the fundamental rights of parents and children to maintain familial integrity. ***See id***. at 41-46.

In its responsive brief, the GAL argues that the court did not err in concluding that the conditions that led to Child's removal from Mother had been remedied. ***See*** GAL's Brief at 12-15. The GAL further contends that any alleged violation of the ICPC was *de minimis* and should not result in Child's removal from Mother in North Carolina. ***See id***. at 15-17. Finally, the GAL asserts that it is in Child's best interest to remain with Mother. ***See id***. at 17-18.

In its Rule 1925(a) opinion, the trial court reasoned as follows with respect to closing Child's dependency case and reunifying her with Mother:

> Here, this court has ended its jurisdiction over Child by closing the case. She is simply no longer a dependent child. ***If CYF felt that the Child was dependent, it should have objected to the court's finding. Furthermore, there is no caselaw that suggests that this determination could not be made pursuant to a pending ICPC application.*** The Superior Court has previously affirmed the order of a trial court requiring a maternal grandmother to complete the ICPC. [***See D.Q.***, 241 A.3d at 1112.] However, in that case there were safety concerns that needed to be addressed before the children could appropriately be placed in maternal grandmother's care. Furthermore, maternal grandmother was not a noncustodial

- 13 -

parent. The ICPC was created for cases where children are potentially being placed out-of-state and cared for by someone other than their biological parent(s).

> ***It is within the trial court's discretion to close a dependency matter when the issues that necessitate supervision no longer exist.*** [***See*** Pa.R.C.J.C.P. 1631]. ***The Agency itself acknowledges that it would recommend reunification if Mother lived in Pennsylvania.*** This court agreed with the Agency that reunification was appropriate, and thus closed the dependency matter. Unlike maternal grandmother in ***D.Q.***, Mother has done everything required of her to make reunification viable. Over one hundred days has passed since the latest ICPC was initiated. The court is not required to wait for an ICPC response from North Carolina to determine whether Mother has completed her goals and reunification is appropriate. ***Very simply, if goals are met and the case closes prior to the ICPC decision, then the need for that decision is obviated and the process stops. The court has no legal obligation to wait on that decision.***

Trial Court Opinion, 11/6/24, at unnumbered 8-9 (cleaned up, emphasis added).

Based on our review, we discern no abuse of discretion by the trial court in denying CYF's request to return Child to Pennsylvania and closing the dependency matter. As aptly stated by the trial court, the ICPC no longer applied to Child once the court closed Child's dependency matter. As related *supra*, the trial court found, based on crediting CYF's own witness, that Child was no longer dependent. CYF does not dispute that Mother remedied the conditions that caused Child's dependency. ***See*** CYF's Brief at 39. Indeed, it is clear from the certified record that CYF did not have any concerns regarding Mother's care of Child. At the June 12, 2024 permanency review hearing, the trial court heard testimony from Ms. Hopkins wherein she stated that the only

barrier to reunification was the pending ICPC request. ***See*** N.T., 6/12/24, at 11. She further testified that if Mother resided in Pennsylvania, CYF would recommend that Child be reunified with her. ***See id***. CYF does not present any concerns with the court's decision to reunify Child with Mother other than its alleged violation of the ICPC. However, CYF does not present any case law, and our research does not reveal any, that mandates ICPC approval by a receiving state prior to the court closing a child's dependency case. Because Child is no longer dependent, the ICPC was rendered inapplicable.

Further, to the extent that Child's stay in North Carolina constituted a "placement" under the ICPC prior to the discharge of her dependency, we conclude that CYF's claim in this regard is moot. ***See In re D.A.***, 801 A.2d 614, 616 (Pa. Super. 2002) (holding that, "[a]s a general rule, an actual case or controversy must exist at all stages of the judicial process, or a case will be dismissed as moot."). As such, CYF's claims on appeal warrant no relief. Therefore, we affirm the order denying CYF's motion for special relief.

Order affirmed.

Judge Kunselman & Judge Nichols join.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

- 15 -

DATE:  <u>7/23/2025</u>