J-A21022-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| CORY SULLIVAN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JESSI SKELTON | : | No. 439 MDA 2025 |

Appeal from the Order Entered March 13, 2025
In the Court of Common Pleas of Schuylkill County Civil Division at
No(s): S-0255-2024

BEFORE: PANELLA, P.J.E., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LANE, J.: **FILED: NOVEMBER 26, 2025**

Cory Sullivan ("Father") appeals *pro se* from the order denying his complaint for partial legal and partial physical custody of his five children, and maintaining sole legal and physical custody in Jessi Skelton ("Mother"). We affirm.

Father and Mother began dating in 2012 and became engaged, although they never married. They lived together with their five children, the subjects of this matter: S.S., born in October 2013; T.S., born in October 2014; C.S., born in January 2016; R.S., born in July 2017; and Sa.S., born in August 2019

_____

[*] Former Justice specially assigned to the Superior Court.

(collectively, the "Children"). Mother's older, minor daughter, A.A., also lived with them.[1]

Central to the trial court's consideration of Father's underlying custody complaint is the fact that he is currently serving a sentence of seventeen and one half to thirty-five years for the extensive physical abuse of the Children and the physical and sexual abuse of Mother, with an order to have no contact with Mother or the Children. We review the underlying factual and procedural history in chronological order.

This Court previously summarized, in the criminal direct appeal from Father's judgment of sentence, his "appalling conduct" as follows:[2]

> Father began abusing Mother physically in 2016 when she was pregnant with [their third child,] C.S., and she went into premature labor after Father threw her onto a bed.
>
> In 2017, during another pregnancy, Father repeatedly threw [Mother] to the floor, spat on her, pulled her hair, and verbally abused her. After their second [sic] child was born, Father's physical abuse increased in frequency and severity. Mother estimated that Father beat her once every week, often by choking her and throwing her to the ground.
>
> Mother testified that Father choked her with a belt around her neck and hit her in the head with a studded belt. Mother testified that there were cuts and marks on her face and head from Father repeatedly striking her with the belt. On more than one occasion, Father forced her to take her clothes off, poured

---

[1] As of the underlying March 13, 2025 order, A.A. had reached the age of eighteen.

[2] For ease of review, we have amended the Superior Court memorandum's references to "Appellant" to "Father," "J.S." to "Mother," and "A.H.A." (Mother's daughter) to "A.A."

water on her and forced her to stay outside in the cold until he allowed her to come inside. Father also forced A.A. to stand outside naked as punishment.

Mother and A.A. both testified about the physical abuse that Father inflicted on the [C]hildren, including frequent beatings with a leather work belt. Father also used a studded belt to beat A.A. and Mother. The Commonwealth introduced photographs showing wounds that Mother suffered on many parts of her body from the beatings, including her face.

As an alternative to the beatings, Father ordered Mother and A.A. to drink shots of alcohol within thirty seconds and made them continue to drink until they either blacked out or vomited.

Father repeatedly threatened to kill Mother and all the [C]hildren if the police were ever called or if they ever told anyone what happened in the house. He also threatened that if they left, he would have people find them and kill them.

[In December 2019, an employee at a store] noticed that Mother had injuries and called the police[.] Pennsylvania State Troopers [arrived and w]hen they observed her injuries, they called for an ambulance[ and] photographed her injuries[.] Mother reported that earlier that morning, Father beat her about her head, arms, legs, and torso with a painter's pole. Mother also stated that Father had been abusing her and many of her children for a long time.

***Commonwealth v. Sullivan***, 326 A.3d 426 (Pa. Super. 2024) (unpublished memorandum at **2-4) (paragraph break added).

In January 2020, the Commonwealth filed numerous charges against Father. We note that at this time, the Children's ages ranged from five months old to six years old. The criminal matter proceeded to a jury trial in March 2022. "Mother gave searing and graphic testimony . . . concerning the abuse and humiliation inflicted upon her by Father, and she authenticated dozens of

photographs depicting the wounds that Father inflicted during regular savage beatings on her head, face, torso, arms, and legs." **Id**. at *4.

The jury found Father guilty of ten counts of aggravated assault with a deadly weapon, five counts of endangering welfare of children, and one count each of aggravated assault, indecent assault, strangulation, terroristic threats, corruption of minors, and furnishing liquor to minors. The trial court imposed an aggregate sentence of seventeen and one half to thirty-five years' imprisonment. The trial court also directed Father to comply with a fifteen year-period of registration under the Sex Offender Registration and Notification Act[3] ("SORNA"). Finally, the court ordered Father to have no contact with Mother or the Children. Father filed a direct appeal with this Court.

Meanwhile, Father initiated these custody proceedings on February 6, 2024, by filing a *pro se* custody complaint requesting shared legal custody and partial physical custody of the Children, in the form of supervised visits at the prison.

> At the custody conciliation conference, Father acknowledged the no contact sentence provision and stated he was . . . only seeking shared legal custody of the [C]hildren. Specifically, Father only requested to be informed on "legal issues" such as medical and educational issues and does not seek the ability to consent. . . .

_____

[3] 42 Pa.C.S.A. §§ 9799.10 to 9799.75.

- 4 -

Trial Court Opinion, 3/13/25, at 2. However, we note that at the custody hearing and in subsequent filings, "Father appear[ed] to have reverted back to seeking shared legal custody and supervised physical custody of the [C]hildren." Trial Court Opinion, 3/13/25, at 2.

In the criminal matter, in August 2024, this Court decided Father's direct appeal. This Court concluded the evidence was sufficient to support four of Father's aggravated assault with a deadly weapon convictions, based on his use of a belt and belt buckle to choke Mother and "violently strike" her head and face. *Sullivan*, 326 A.3d 426 (unpublished memorandum at **13-14). However, this Court reversed five other convictions of aggravated assault with a deadly weapon. This Court did not dispute that Father had also used a belt to strike Mother, but reasoned that "the way Father used the belt on Mother's legs, buttocks, . . . stomach[, and breasts] was not likely to cause death or serious bodily injury."[4] *Id*. at *15. Finally, we note Father did not challenge his remaining, tenth aggravated assault with a deadly weapon count, which "arose from [his] use of a painter's pole as a deadly weapon," nor his other

_____

[4] This Court did not remand for resentencing however, as the reversal of these convictions did not disrupt the overall sentencing scheme.

On the other hand, this Court did vacate the trial court's amendment of Father's sentence, on post-sentence motions, as the 120-day Pa.R.Crim.P. 721 period for sentencing reconsideration had expired. Accordingly, this Court ordered reinstatement of Father's initial sentence, aggregating seventeen and one half to thirty-five years' imprisonment.

convictions. *Id*. at *9 n.2. Father did not challenge, and this Court did not disturb, the no-contact order.

On September 5, 2024, Father filed a motion, in the instant custody matter, requesting the appointment of legal counsel and a separate guardian *ad litem* for the Children. He also listed the witnesses that he wished to present at the custody hearing. The same day, Father submitted a subpoena to the Monroe County Children and Youth Services agency ("CYS"), for "all documentation, reports, investigating notes, findings, conclusions, *etc.* pertaining to" him and all five Children. Subpoena, 9/5/24, at 1.

On September 30, 2024, the trial court held a pre-trial hearing on Father's issues. It first stated that the issue for the custody matter was whether Father had any custody rights in light of his criminal convictions. With respect to the appointment of counsel for the Children, Father averred he wanted "to get unbiased opinions." N.T., 9/30/24, at 14. Father also argued he wished to present witnesses "to give context to what kind of father [he] was before [his] incarceration," and that he had not spoken to the Children in four years, while they were "told the worst things that you can imagine about" him. *Id*. at 14, 15. The trial court responded: "[T]he fact is, . . . you're incarcerated for a significant amount of time for significant offenses," and there was "overwhelming evidence" for the convictions. *Id*. at 14, 15. The court ruled that the witnesses for the custody hearing would be Father, Mother, and the Children only. Relatedly, the court denied Father's request

for counsel and guardians *ad litem* for the Children, reasoning that the court would interview them and consider their testimony. *Id*. at 15. Father also objected to the proposed admission of the trial transcripts from his criminal trial in the custody proceedings, arguing there were "multiple things that were said" but he "was acquitted." *Id*. at 10. The court stated it would limit its consideration of Father's criminal matter to the convictions affirmed on appeal. *See id*. at 18

As to the CYS records, Father claimed that CYS previously investigated Mother's claims that he sexually and physically abused A.A., but CYS deemed the allegations "unfounded." *Id*. at 17. The trial court permitted Father to testify that there was a CYS investigation and that "it was unfounded," but the court excluded the admission of the reports themselves.

On the day of the scheduled custody hearing, February 7, 2025, Father filed a petition for *habeas corpus* relief, requesting to attend in person. At the start of the hearing, the trial court denied Father's request, and thus he participated in the hearing, *pro se*, *via* videoconference. *See* N.T., 2/7/25, at 4-5. Father and Mother each testified. Father did not present any additional evidence. Mother introduced evidence relating to Father's criminal trial. Thereafter, on February 29, 2025, the trial court conducted *in camera* interviews of each of the Children, who at that time ranged in age from five years old to twelve years old.

On March 13, 2025, the trial court issued the underlying order, along with an opinion, awarding Mother sole legal and physical custody of the Children.

Father timely filed a timely *pro se* notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i). The trial court filed a responsive Rule 1925(a) opinion. We note that subsequently, without leave of court, Father filed an amended Rule 1925(a)(2) statement, which raised two additional issues.

On appeal, Father raises fourteen issues for our review:

1. Did the trial court err in its analysis and custody order by failing to consider factors unique to incarcerated parents?

2. Did the trial court err when interviewing the [C]hildren, showing a clear bias towards [Father] causing him to suffer unfair prejudice as a result?

3. Did the trial court err by precluding [Father] from presenting evidence in this case, the evidence being records and reports from [CYS]?

4. Did the trial court err in allowing the introduction of trial transcripts from [Father's] criminal proceedings as evidence in the custody matter, further confusing the issues in this case?

5. Did the trial court err by using information and consider allegations and offenses in which [Father] was a[c]quitted in its determinations for custody, violating the court's previous rulings?

6. Did the trial court err by denying [Father] from calling witnesses on his behalf, assisting in the development of and establishing a full record?

- 8 -

7. Did the trial court err by precluding [Father] from using specific evidence, *i.e.*, photos, videos, and documentation, thereby restricting pertinent facts depriving the ability to develop a full record?

8. Did the trial court err when it denied [Father's] motions to appoint counsel and [guardians *ad litem*] for the [C]hildren, thereby violating the [C]hildren's right to counsel and due process rights?

9. Did the trial court err by failing to order any evaluations of [Father, Mother,] and the [Children]?

10. Did the trial court err by allowing evidence that was not provided to [Father] during discovery or any pretrial hearings?

11. Did the trial court err by allowing [Mother] to use information and evidence that the court previously stipulated was prohibited?

12. Did the trial court err by allowing counsel for [Mother] to file all [its] motions *ex parte* violating [Father's] due process rights causing him to suffer unfair prejudice as a result?

13. Did the trial court err when it entered a custody order that was tantamount to termination of [Father's] parental rights?

14. Did the trial court err by denying [Father's] habeas corpus *ad testificadum*?

Father's Brief at iv[5] (unnecessary capitalization omitted and issues reordered for ease of disposition).

_____

[5] The statement of questions involved spans three pages, all of which are incorrectly numbered "iv."

In Father's first issue, he avers the trial court erred in its analysis of the statutory custody factors.[6]  In his second issue, Father asserts "the trial court's interview with the [C]hildren was completely defective," because the court asked only five of Father's proposed sixty questions.  Father's Brief at 62 (unnecessary capitalization omitted).

Pennsylvania Rule of Appellate Procedure 1925(a)(2) provides: "In a children's fast track appeal[, t]he concise statement of errors complained of on appeal **shall** be filed and served with the notice of appeal."  Pa.R.A.P. 1925(a)(2)(i) (emphasis added).  Generally, "any issue not raised in an appellant's Rule 1925(b) statement will be deemed waived for purposes of appellate review."  **Hess v. Fox Rothschild, LLP**, 925 A.2d 798, 803 (Pa. Super. 2007).  Additionally, "issues raised in an untimely supplemental Rule 1925(b) statement that has been filed without leave of court are waived."  **Id**. at 798 n.2.  **But see In re K.T.E.L.**, 983 A.2d 745, 747 (Pa. Super. 2009) (holding that "the failure of an appellant in a children's fast track case to file contemporaneously a concise statement with the notice of appeal pursuant to [Pa.R.A.P.] 905(a)(2) and 1925(a)(2), will result in a defective notice of appeal,[t]he disposition of [which] will then be decided on a case by case basis").

---

[6] **See** 23 Pa.C.S.A. § 5328(a)(1)-(16).

Here, Father did not include either of his first two issues in his initial, timely Rule 1925(a)(2) statement. Instead, he filed, after the trial court issued a Rule 1925(a) opinion, a second Rule 1925(a)(2) statement, untimely and without leave of court. Accordingly, we conclude he has waived both issues for appellate review. *See Hess v*, 925 A.2d at 802 & n.2.

Father's next five claims concern evidentiary rulings. We first consider the applicable standard of review and relevant principles:

> We review a trial court's determination in a custody case for an abuse of discretion, and our scope of review is broad. Because we cannot make independent factual determinations, we must accept the findings of the trial court that are supported by the evidence. We defer to the trial [court] regarding credibility and the weight of the evidence. The trial [court]'s deductions or inferences from its factual findings, however, do not bind this Court. We may reject the trial court's conclusions only if they involve an error of law or are unreasonable in light of its factual findings.

*D.Q. v. K.K.*, 241 A.3d 1112, 1117 (Pa. Super. 2020) (citation omitted). "In any custody case, the primary concern is the best interest of the child." *Id*. (*citing*, *inter alia*, 23 Pa.C.S.A. §§ 5328, 5338).

This Court has stated:

> The admission of evidence is a matter vested within the sound discretion of the trial court, and such a decision shall be reversed only upon a showing that the trial court abused its discretion. "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record."
>
> The threshold inquiry with admission of evidence is whether the evidence is relevant.

- 11 -

> Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding the existence of a material fact. [Pa.R.E. 401(a).] In addition, evidence is only admissible where the probative value of the evidence outweighs its prejudicial impact.

*Wilson v. Smyers*, 284 A.3d 509, 514 (Pa. Super. 2022) (*citing*, *inter alia*, Pa.R.E. 401, 402, 403). Even if evidence is relevant, however, a court may exclude it "if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403. "To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party." *In re Estate of Byerley*, 284 A.3d 1225, 1239 (Pa. Super. 2022) (citation omitted).

In his third issue, Father challenges the exclusion of CYS records from the evidence. He alleges these records would have shown that he "never abused his children, and [would have] disproved [Mother's] allegations . . . of abuse." Father's Brief at 9. Father alleges that CYS interviewed the two oldest Children, S.S. and T.S., but they "never corroborated [the] allegations," and this "documentation would have logically and reasonably proved material facts at issue in the case *sub judice*." *Id*. at 10. Father also contends the court "should have placed greater weight on the unfounded reports of abuse[]

because it relate[d] to the [C]hildren's safety[] and what the [C]hildren said directly." *Id*.

In its opinion, the trial court pointed out that it had permitted Father to testify about the CYS investigation and the "unfounded" results. Trial Court Opinion, 4/17/25, at 3. However, at the custody hearing, Father did not testify to any reports or findings by CYS. Instead, Father's only mention of CYS came "on cross-examination . . . where he acknowledged that the [trial court] permitted him to testify about the records." *Id*. (*citing* N.T., 2/7/25, at 30). In any event, Father's own statements at the pre-trial hearing indicated that the CYS report was about A.A., whom the court observed was "not a part of this proceeding." *Id*. Thus, the court reasoned, "introduction of reports regarding A.A. would have been irrelevant under . . . Rule 401." *Id*. (footnote omitted). Finally, the trial court reasoned: "There was plenty of abuse committed by [Father and thus] the court did not have to consider testimony of unfounded abuse." *Id*. (unnecessary capitalization omitted).

After review, we determine Father has failed to establish the trial court abused its discretion. Father does not acknowledge, let alone address, the trial court's reasoning. He does not dispute that the court permitted him to testify about the CYS investigation, especially the result that it was unfounded, yet he offered no such testimony at the custody hearing. Father fails to explain why, under these circumstances, the court's ruling prejudiced him.

- 13 -

***See Wilson***, 284 A.3d at 514; ***see also In re Estate of Byerley***, 284 A.3d at 1239. Accordingly, no relief is due on Father's third issue.

Father's fourth and fifth issues challenge the trial court's admission of the trial transcript of his criminal matter into evidence. He asserts the evidence "was unfairly prejudicial, confused the issues of this custody matter, presented an undue delay, . . . and needlessly presented cumulative evidence." Father's Brief at 13. Father also asserts the Children did not testify at his criminal trial. Additionally, Father contends the criminal trial included "vindictive allegations [of which he was] acquitted," and the Superior Court "toppled [his] convictions." ***Id***. at 15.

The trial court acknowledged that Father "was acquitted of or had reversed nine charges," but noted none of these charges concerned the Children in this custody matter, but instead pertained to Mother and A.A. Trial Court Opinion, 4/17/25, at 4. In excluding the criminal trial transcripts from the evidence in this custody matter, the trial court reasoned:

> [B]oth Mother and Father testified at the criminal trial with each given the opportunity to cross-examine the other. Any allegations made at trial could have been disproved at trial. If [this trial court] had precluded the criminal transcripts, the custody trial would have acted as [a] second bite at the apple for both parties. Thus, the criminal transcripts were not prejudicial and were highly probative and relevant as both parties had been given the chance to present evidence, and make allegations and arguments. The criminal trial transcript was reviewed by the court to consider the charges [for] which Father is serving a significant sentence for abusing his wife and children.

\* \* \* \*

- 14 -

. . . Furthermore, none of the dropped charges involved the minor [C]hildren at issue.

*Id*.[7] (unnecessary capitalization omitted).

After review, we conclude the trial court did not abuse its discretion in admitting the criminal trial transcripts in this custody matter. ***See Wilson***, 284 A.3d at 514. Father's arguments consist of generalities, which fail to identify any particular information in the criminal transcripts that was allegedly inappropriate for this custody matter. Furthermore, Father suggests he was largely exonerated in the criminal proceedings — a claim not supported by the record. ***See*** Father's Brief at 15 (alleging the criminal trial was "harassed litigation . . . that saw[] an overwhelming amount of withdrawn, dismissed and a[c]quitted offenses"). While this Court reversed five of his aggravated assault with a deadly weapon convictions, we did so on the narrow legal grounds that his conduct, "while unquestionably repulsive and pain-inducing, was simply not calculated to inflict the same types of injuries as [his other acts of using] the blunt force of a heavy metal object to [Mother's] stomach, torso, or back." ***Sullivan***, 326 A.3d 426 (unpublished memorandum at *15). Additionally: this Court affirmed four of his aggravated assault with a deadly weapon convictions; and Father did not challenge a tenth aggravated assault with a deadly weapon conviction — based on his beating Mother with

_____

[7] For ease of review, we have amended the trial court's Rule 1925(a) opinion's references to "Appellant" to "Father," and "Ms. Skelton" to "Mother."

a painter's pole, nor another count of aggravated assault, indecent assault, strangulation, terroristic threats, corruption of minors, furnishing liquor to minors, or five counts of endangering welfare of children. Finally, Father does not challenge the trial court's reasoning that it would consider only the convictions which continued to stand. *See* N.T., 9/30/24, at 11 (trial court stating it will "consider just the evidence and what you were convicted of"); N.T., 6/27/24, at 29 (trial court stating it "will not consider anything that you weren't convicted of"). Based upon the foregoing, we find no merit in Father's fourth and fifth claims for relief.

We next address Father's sixth and seventh issues, which allege the trial court erred in precluding him from calling witnesses and presenting evidence. Father contends he would have presented "valuable testimony from family members and friends," which would have: shown "what kind of father [he] is;" accurately described "the [C]hildren's lives before and after his incarceration;" and "contradicted the allegations of abuse and harm to the" Children. Father's Brief at 26 (unnecessary capitalization omitted). Father also asserts that "photos, videos, [and] documentation" would have supported "his stance[] as a loving, caring father, and the manipulation to the [C]hildren by" Mother. *Id*. (unnecessary capitalization omitted). Father additionally claims that "videos and social media content" would have "eviscerate[d Mother's] credibility and character." *Id*.

With respect to precluding both parties from calling witnesses, the trial court reasoned:

> Father avers he was barred from calling witnesses on his behalf[,] which deprived him of any opportunity to defend himself against Mother's allegations. Father purports the testimony would have contradicted Mother's testimony as to abuse and harm to the [C]hildren while presenting a full picture of the [C]hildren's lives. Again, the custody trial was not intended to re-litigate the criminal trial. Father had opportunities at his criminal trial to defend against Mother's accusations. Additionally, the [C]hildren were interviewed at the custody trial to create a full picture of [their] lives. Father is serving a sentence of [seventeen and one half to thirty-five] years and the purpose of the custody trial was to determine whether [Father] should have any custody rights in light of his conviction and lengthy prison sentence.

Trial Court Opinion, 4/17/25, at 6.

After review, we conclude Father has not shown the trial court abused its discretion. *See Wilson*, 284 A.3d at 514. His vague references — to "family members and friends" who would have "show[n] what kind of father" he is, described "the [C]hildren's lives before and after his incarceration," contradicted the allegations of abuse, and undermined Mother's credibility — fail to establish grounds for relief. Father's Brief at 26. Father does not identify any witness by name, nor explain what they would have stated at the custody hearing. Similarly, he does not identify any particular "photo, video[] or documentation." *Id*. "It is well-established that the failure to develop an argument with citation to, and analysis of, pertinent authority results in waiver of that issue on appeal." *C.H.L. v. W.D.L.*, 214 A.3d 1272, 1276 (Pa. Super.

- 17 -

2019) (*citing*, *inter alia*, Pa.R.A.P. 2119(a)). As Father does not present a developed argument, he has waived any claim for relief. ***See id***.

In any event, the trial court reasoned that Father's purported evidence would not have been relevant. It cited the evidence previously alleged by Father:

1. Numerous photographs and videos of himself with his children before his incarceration;

2. Photographs, documents, social media content, [C]raigslist posts, copies of fraudulent checks, and falsified statements;

3. Documentation of [the C]hildren's living conditions prior to incarceration and after his incarceration, showing instability of their living conditions;

4. Photographs and videos contained on a flashdrive;

5. [CYS] reports from Monroe County;

6. Letters, drawings, cards, pictures that Father has sent to his children over the last four years;

7. Social media posts illustrating the relationship the [C]hildren had with him[,]and friends, family, and community;

8. "Kids First" program certification of completion; and

9. Documents from [Mother's] previous custody dispute to show parental alienation and manipulative practices.

Trial Court Opinion, 4/17/25, at 6-7.

The trial court reasoned:

[T]here was no testimony and/or evidence presented as to the [C]hildren's safety with Mother, protective services involvement, the lack of stability, consistency, loving, and nurturing in Mother's home, [nor] the use of alcohol and drugs. As mentioned ***supra***, the issue before the undersigned was Father's custodial rights. An

- 18 -

attempt to smear Mother's credibility and parenting was not going to grant Father custody rights. Thus, there was no additional evidence or testimony considered for this reason.

Additionally, a picture of the [C]hildren smiling with Father prior to his incarceration would have done little to contradict the abundance of testimony regarding abuse given at his criminal trial and further supported by the [C]hildren's own testimony. Also, Father was advised he could testify to what his children's lives were like and their relationship with him prior to his incarceration. [N.T., 9/30/24, at 25.] Despite this, Father again wanted to admit photographs at the custody trial and the undersigned permitted it. [N.T., 2/7/25, at 30]. Father failed to do so[;] however, it was not necessary as he had testified to the [C]hildren's lives, the falsity of the allegations against him, and why he should have some form of custody.

The remainder of Father's proposed exhibits were either irrelevant, such as Mother's previous custody dispute, or in violation of his no-contact provision, such as the items [he] sent to the [C]hildren the past four years.

*Id*. at 7.

On appeal, Father fails to address any of the trial court's discussion, thus failing to show the court's reasoning amounted to an abuse of discretion. For the foregoing reasons, we conclude no relief is due on Father's sixth and seventh issues.

In Father's eighth issue, he asserts the trial court erred in declining to appoint counsel and guardians *ad litem* for the Children. In support, Father relies on 23 Pa.C.S.A. § 5334(a) and Pa.R.Civ.P. 1915.11-2(a)(1).

Section 5335(a) of the Child Custody Act[8] provides:

_____

[8] ***See*** 23 Pa.C.S.A. §§ 5321-5340.

- 19 -

> The court *may* appoint counsel to represent the child if the court determines that the appointment will assist in resolving the issues in the custody proceeding. If a child has legal counsel and a guardian *ad litem*, counsel shall represent the legal interests of the child and the guardian *ad litem* shall represent the best interests of the child.

23 Pa.C.S.A. § 5335(a) (emphasis added). "Substantial allegations of abuse constitute a reasonable basis for appointing counsel for the child." 23 Pa.C.S.A. § 5335(b).

Section 5334(a) provides: "The court *may* on its own motion or the motion of a party appoint a guardian *ad litem* to represent the child in [a custody] action." 23 Pa.C.S.A. § 5334(a) (emphasis added). A court "may" appoint a guardian *ad litem* in cases involving "substantial allegations of abuse" if, *inter alia*, "the court is satisfied that the relevant information will be presented to the court *only* with such appointment." 23 Pa.C.S.A. § 5334(c)(2) (emphasis added). "The function of the [guardian *ad litem*] is to represent and protect unrepresented minors and their interests.'" *C.L. v. M.P.*, 255 A.3d 514, 525 (Pa. Super. 2021) (*en banc*) (citation omitted).

Similarly, Rule of Civil Procedure 1915.11(a) provides that in a custody action, "[u]pon its own motion or a party's motion, the court *may* appoint an attorney to represent a child who is the subject of [a custody] action[,]" and the attorney "shall represent the child's legal interest." Pa.R.Civ.P. 1915.11(a)(1), (3)(i) (emphasis added). Rule 1915.11-2(a)(1) states that "[o]n its own motion or a party's motion, the court *may* appoint a guardian

*ad litem* if the court finds that the appointment is necessary for determining the child's best interest." Pa.R.Civ.P. 1915.11-2(a)(1) (emphasis added).

On appeal, Father claims the allegations of abuse mandated the appointment of counsel and guardians *ad litem* for the Children. Father further contends: (1) the lack of representation for the Children "allowed for coaching by [Mother] and her family;" and (2) such coaching "was jarringly obvious" as, "[f]or example, during their interview, . . . the [C]hildren were asked if they remember anything about [him, but], they were only able to recall being punished[] or had no memory at all." Father's Brief at 44. Father also reasons the Children may have had "information or a preference that they [were] not comfortable expressing directly to the [trial] court or through" Mother, and instead the Children "may have felt more comfortable" with an attorney. ***Id***. at 39.

In denying Father's request for the appointment of counsel and guardians *ad litem* for the Children, the trial court found that "determining the best interest of the [C]hildren was not difficult given the circumstances of the matter." Trial Court Opinion, 4/17/25, at 8.

After review, we conclude that no relief is due. First, we observe that neither the statutes nor the Rules of Civil Procedure, cited above, require the appointment of legal counsel or a guardian *ad litem* for a child in a custody matter. Instead, the plain language of these subsections provides that a court "may," but is not required to, order such appointments. ***See In Interest of***

**S.U.**, 204 A.3d 949, 960 n.8 (Pa. Super. 2019) (*en banc*) (noting that "[r]egarding statutory construction, the Pennsylvania Supreme Court has stated . . . the plain language of a statute is in general the best indication of the legislative intent that gave rise to the statute"); **see also Lorino v. Workers' Comp. Appeal Bd.** 266 A.3d 487, 493 (Pa. 2021) (reasoning that "[t]he term 'shall' establishes a mandatory duty, whereas the term 'may' connotes an act that is permissive, but not mandated or required").

In any event, Father again wholly ignores the reasoning of the trial court, as well as the particular provisions of the law he cites. As stated above, Section 5335(a) of the Child Custody Act provides a "court **may** appoint counsel to represent the child **if [it] determines that the appointment will assist in resolving the issues in the custody proceeding**." 23 Pa.C.S.A. § 5335(a) (emphases added). Similarly, Section 5334(a) states that a court **may** appoint a guardian *ad litem* in a case involving "substantial allegations of abuse" if, *inter alia*, "the court is satisfied that the relevant information will be presented to the court **only** with such appointment." 23 Pa.C.S.A. § 5334(c)(2) (emphasis added). Here, the trial court reasoned that a determination of the Children's best interests "was not difficult given the circumstances of the matter." Trial Court Opinion, 4/17/25, at 8. The record, including Father's basis for criminal convictions, and Mother's and the Children's testimony at the custody hearing, support this rationale.

Finally, Father has not cited any evidence of record to support his bald claim that the Children may not have felt "comfortable" expressing themselves to the trial court. Father's Brief at 39. Based upon the foregoing, no relief is due with respect to Father's eighth claim.

In Father's ninth issue, he challenges the trial court's consideration of his criminal convictions without also conducting a threat of harm evaluation pursuant to 23 Pa.C.S.A. § 5329(a) and (c). Father contends "the trial court was selective in its consideration of the statute, by using the criminal convictions as a determinative factor and then failing to order an evaluation to determine if [he] pose[d] a threat of harm to the [C]hildren." Father's Brief at 37 (unnecessary capitalization omitted).

Section 5329 of the Child Custody Act, "Consideration of criminal conviction," provides:

> **(a) Offenses.** Where a party seeks any form of custody, the court shall consider whether that party . . . has been convicted of . . . any of the offenses in this section . . .. The court shall consider such conduct and determine that the party does not pose a threat of harm to the child before making any order of custody to that party when considering the following offenses:
>
> * * * *
>
> 18 Pa.C.S.A. § 2702 (relating to aggravated assault).
>
> * * * *
>
> 18 Pa.C.S.A. § 2706 ( . . . terroristic threats).
>
> * * * *
>
> 18 Pa.C.S.A. § 2718 ( . . . strangulation).

* * * *

18 Pa.C.S.A. § 3126 ( . . . indecent assault).

* * * *

18 Pa.C.S.A. § 4304 ( . . . endangering welfare of children).

* * * *

18 Pa.C.S.A. § 6301 ( . . . corruption of minors).

* * * *

        **(c)** *Initial evaluation.* At the initial in-person contact with the court, the judge, *conference officer* or other appointed individual shall perform an initial evaluation to determine whether the party or household member who committed an offense under subsection (a) poses a threat to the child and whether counseling is necessary. . . . After the initial evaluation, the court may order further evaluation or counseling by a mental health professional if the court determines it is necessary.

23 Pa.C.S.A. § 5329(a), (c) (emphasis added); *see also* Pa.R.Civ.P. 1915.3-

2(b).

        Here, the trial court reasoned:

[T]he parties attended a custody conciliation conference on May 6, 2024. There, the hearing officer conducted his evaluation and stated in his "Summary of Conciliation Conference[,]" under [the heading,] "Risk of Harm[,]" that Mother had no criminal history, but that Father did. Because there was no evidence that Mother posed any threat to the minor [C]hildren and Father was currently incarcerated, no further evaluations was needed nor required.

Trial Court Opinion, 4/17/25, at 8.

        After review, we conclude Father has failed to establish grounds for

relief. Again, he wholly fails to address the trial court's reasoning. Our review

of the record shows the trial court accurately summarized the hearing officer's post-conference report. ***See*** Summary of Conciliation Conference, 5/6/24, at unnumbered 3. On appeal, Father does not dispute the trial court's reasoning: (1) that there was no evidence Mother had a criminal history; (2) Father was incarcerated and thus did not currently pose a threat to the Children; and thus (3) "no further evaluations [were] needed nor required." Trial Court Opinion, 4/17/25, at 8. Accordingly, no relief is due on Father's ninth issue.

In Father's tenth issue, he alleges that Mother violated a pre-trial court order by introducing documents related to his criminal convictions. In support, Father contends the court "previously" precluded Mother from introducing "police reports and the affidavit of probable cause from [his] criminal matter," but the court later permitted these, as well as other "evidence unbeknownst to" him, a prior Protection from Abuse violation, an Instagram message, and a letter.[9] Father's Brief at 48.

The trial court addressed these claims as follows:

> Father avers Mother was permitted to introduce police reports, [an] affidavit of probable. cause, a Protection from Abuse violation, an Instagram message, and a letter sent from Father to Mother. . . .

---

[9] Father also avers: "The trial court erred by allowing [Mother] to disregard" an August 23, 2024 order. Father's Brief at 48. The only order with that filing date in the certified record, however, merely: (1) scheduled a pre-trial conference; (2) directed the parties to submit memoranda setting forth the anticipated length of trial, a list of exhibits and witnesses, with an offer or proof for each witness, "and a detailed proposal for physical custody." Order, 8/23/24.

At the [custody hearing], Father objected to the introduction of the police reports[,] which **we sustained**. [N.T., 2/7/25, at 89.] **Father was informed of the other exhibits that Mother wished to admit and failed to object to them.** Father was also cross-examined on the Instagram message, Protection from Abuse violation, and the letter he wrote without objection. Despite the lack of objections, the undersigned did not consider any of the evidence Father believes was to be withheld by stipulation. Thus, our decision was not of an improper basis.

Trial Court Opinion, 4/17/25, at 10 (emphasis and paragraph break added).

After review, we conclude that no relief is due. Father again wholly fails to address the trial court's reasoning. With respect to the police reports, our review of the custody hearing transcript confirms that the trial court sustained Father's objection, and thus the court did not admit or consider them. **See** N.T., 2/7/25, at 89.

Furthermore, on cross-examination of Father, Mother's counsel asked whether he wrote letters, text messages, or Instagram or Facebook messages to Mother in May 2020 while a Protection from Abuse order was in effect. **See id**. at 22. Father did not object to this question, and indeed responded that he did write such messages. **See id**. Mother's counsel also asked Father about a January 2020 Instagram message, and Father again did not object, but rather confirmed that he sent it. **See id**. at 31. Accordingly, Father has waived any claim for appellate review. **See** Pa.R.A.P. 302(a) (stating that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal"); **see also State Farm Mut. Auto. Ins. Co. v. Dill**, 108 A.3d 882, 885 (Pa. Super. 2015) (*en banc*) (stating that "[i]t is axiomatic that

'[i]n order to preserve an issue for appellate review, a party must make a timely and specific objection at the appropriate stage of the proceedings before the trial court[, f]ailure to timely object to a basic and fundamental error will result in waiver of that issue[,]'" and "[o]n appeal, we will not consider assignments of error that were not brought to the tribunal's attention at a time at which the error could have been corrected or the alleged prejudice could have been mitigated").

In Father's twelfth issue, he avers Mother improperly filed a June 13, 2024 motion to dismiss the custody complaint and a pre-trial memorandum "*ex parte*," by not serving copies on him. Father's Brief at 48. By way of background, we note the trial court denied Mother's motion to dismiss the day after she filed it.

Respectfully, we discern that Father has misapprehended the meaning of the term "*ex parte*" under Pennsylvania law. "[A]n *ex parte* communication, by definition, involves the inclusion of one party in a **consultation** with a judge over the exclusion of another." **Commonwealth v. Murray**, 83 A.3d 137, 155 (Pa. 2013) (emphasis added). "[A]n *ex parte* **communication** [is] 'a communication between counsel and the court when opposing counsel is not present.'" **Id**.

Here, Mother's filing of a motion and a memorandum were not communications with the trial court. To the extent Father objects to the lack of service on him, we determine no relief is due. The certificates of service

attached to both filings indicated that Father was served at his current address, the SCI Rockview prison. We note that at the pre-trial conference, Father averred he had not received either filing due to issues with the prison's mail system. *See* N.T., 9/30/24, at 7. Mother's counsel responded that he did not "receive[] anything back" from the prison indicating "any rejection." *Id*.

In any event, even if Father did not receive either filing, we discern no actionable prejudice. The trial court denied Mother's motion to dismiss the day after it was filed, specifying it would "hold a hearing and determine whether Father is entitled to any custody of the minor [C]hildren in light of his criminal conviction [] and lengthy sentence." Trial Court Opinion, 3/13/25, at 2. With respect to the pre-trial memorandum, Father attended the pre-trial conference and had a full opportunity to discuss the potential evidence proffered by Mother. Aside from his bald claims of prejudice, Father has not identified any recognizable detriment suffered. Accordingly, no relief is due on Father's twelfth claim.

In Father's thirteenth issue, he claims the trial court's custody ruling "was tantamount to termination of [his] parental rights without . . . due process as required." Father's Brief at 52.

Upon review, however, we determine that Father has waived this issue for failure to provide any supporting discussion or legal argument. *See* Pa.R.A.P. 2119(a). Instead, Father's discussion pertains to other issues, for

example the trial court's review of the Section 5328(a) custody factors and the court's alleged failure to consider "factors unique to prison cases." ***See*** Father's Brief at 52, 54-58. As stated above, Father has waived any challenge concerning the statutory factors for failure to include it in his initial, timely Rule 1925(a)(2) statement. ***See supra*** at 11. Father has also waived, for the same reason, his references to imprisonment as a custody factor. Accordingly, we determine no relief is due on his thirteenth issue.

In his fourteenth issue, Father purports to challenge the trial court's denial of his request for *habeas corpus* relief, in the form of attending in person attendance the February 7, 2025 custody hearing. ***See*** Father's Brief at 52. In support, Father asserts the alleged failure to provide him, an inmate, with notice of his right to petition the court to participate in the proceeding, in violation of Pa.R.Civ.P. 1930.4(f)(1)(ii).

The Rule cited by Father provides: "A party serving original process on an incarcerated party in a domestic relations action shall include . . . a specific notice of the incarcerated party's right to petition the court to participate in the proceeding." Pa.R.Civ.P. 1930.4(f)(1)(ii).

Preliminarily, we observe that Father did not raise any objection before the trial court concerning an alleged failure to comply with Rule 1930.4(f)(1)(ii). Accordingly, he has waived this claim. ***See*** Pa.R.A.P. 302(a); ***see also State Farm Mut. Auto. Ins. Co.***, 108 A.3d at 885.

In any event, we reiterate that Rule 1930.4(f) applies to a party who serves "original process" on an incarcerated party. Pa.R.Civ.P. 1930.4(f). "[O]riginal process is a necessary 'prerequisite to investing a court with personal jurisdiction over the defendant.' 'Service of process is a mechanism by which a court obtains jurisdiction of a defendant, and therefore, the rules concerning service of process must be strictly followed.'" **Ferraro v. Patterson-Erie Corp.**, 313 A.3d 987, 999 (Pa. 2024) (citations omitted). Here, it was Father who initiated these proceedings by filing a custody complaint. Therefore, any reliance on Rule 1930.4(f) is mistaken.

Nevertheless, to the extent Father claims the trial court denied his due process rights, we conclude no relief is due. **See** Father's Brief at 60 (claiming "that the [t]rial court violated his [d]ue [p]rocess [r]ights, thus barring him a meaningful opportunity to be heard . . . by not informing him of his right to attend"). "A question regarding whether a due process violation occurred is a question of law for which the standard of review is *de novo* and the scope of review is plenary." **S.T. v. R.W.**, 192 A.3d 1155, 1160 (Pa. Super. 2018).

This Court has stated:

> In custody hearings, parents have at stake fundamental rights: namely, the right to make decisions concerning the care, custody, and control of their child.
>
> Due process must be afforded to parents to safeguard these constitutional rights. Formal notice and an opportunity to be heard are fundamental components of due process when a person may be deprived in a legal proceeding of a liberty interest, such as physical freedom, or a parent's custody of her child. It is well settled that procedural due process requires, at its core, adequate

- 30 -

> notice, opportunity to be heard, and the chance to defend oneself before a fair and impartial tribunal having jurisdiction over the case. ***Due process is flexible and calls for such procedural protections as the situation demands.***

***Id***. at 1160-61 (original emphasis omitted and emphasis added). "[I]ncarcerated parents [do] not have an absolute right to be physically present at [a custody] hearing. In other words, the court does not have to grant to writ of *habeas corpus ad testificandum*, but an incarcerated parent must still be provided an opportunity to be heard." ***Id***. at 1163. Thus, a court is not required to grant writs of *habeas corpus ad testificandum*, "but an incarcerated parent must still be provided an opportunity to be heard." ***Id***. This Court has also stated: "In incarceration cases, telephone or video testimony should now be the practice standard, not the exception." ***Id***.

On appeal, Father does not recognize that he did not have an absolute right to be physically present at the custody hearing. ***See generally*** Father's Brief at 60-62. In any event, critically, Father has not explained how his participation in the hearing *via* videoconference impeded his due process rights or right to be heard, or affected the outcome of the hearing. Accordingly, we observe no abuse of discretion in the trial court's denial of Father's petition for *habeas corpus* relief. Permitting Father to participate through alternative audiovisual means was an appropriate exercise of discretion that comported with due process. ***See S.T.***, 192 A.3d at 1160-63. Thus, no relief is due on Father's final issue.

As we have concluded Father is not entitled to relief on any of his claims, we affirm the trial court's order denying his complaint for custody and maintaining sole legal and physical custody in Mother.

Order affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/26/2025